# EXHIBIT A

# 213701

**OFFICE USE ONLY**

Account Name: _Southern End_

Account Number: _213701_


**Benson**
**Lumber & Hardware**
*Since 1913*

## APPLICATION FOR BUSINESS CREDIT
and
## NON-CONSUMER CREDIT AGREEMENT
with

BENSON'S LUMBER AND HARWARE, INC
P.O. Box 444
Derry, New Hampshire 03038-0444
(603) 432-2531
800-479-5439
www.bensonslumber.com

BENSON'S LUMBER AND HARWARE, INC
P.O. Box 1110
Londonderry, New Hampshire 03053-1110
(603) 432-9863
800-479-5439
www.bensonslumber.com

(Hereinafter individually and collectively referred to as "Benson's")

The undersigned hereby applies to Benson's for the establishment of a business credit account on the terms and conditions provided for herein, and represents and warrants the following credit information to be true, accurate and complete.

## Section 1: Individuals and Sole Proprietorships

Your Name: BRYAN GORMAN / KEITH GORMAN

Business Name: SOUTHERN END REALTY LLC

Business Address: 1105 LAKEVIEW AVE DRACUT MA 01826

Phone Number: 978957-6666          Fax Number: 978957-7944

Social Security Number: BRYAN ████████████    KEITH

## Section 2: General Information

List all trade names used by your business: SOUTHERN END REALTY LLC

The principal checking account of the business is:

Bank: _____████████████

Office Location: _____████████████

Contact Person: _____          Contact Phone: _____

The principal lender to the business is:

Lender: ████████████

Address: ████████████

Total Loans: $ ████████          Contact Person: ████████

**Please provide the information requested for three (3) major business references:**

Business Name: ███████████

Contact (name and title): ████████████

Address: ███████████████

Phone: ████████████████  Fax: ████████

Business Name: █████████████

Contact (name and title): ██████████████

Address: █████████████████████

Phone: ████████████  Fax: ██████████

Business Name: ████████████████

Contact (name and title): █████████████

Address: ███████████████████

Phone: ███████████  Fax: _____

## Section 3: Terms and Agreement

The information provided in this application to Benson's is for the purpose of obtaining business credit, and the undersigned certifies that this information is complete and accurate as of this date. The undersigned agrees to promptly notify Benson's of any changes in the information provided.

The undersigned agrees that the payment terms are as follows:

Payments on account are due fully net 10th prox., and as may otherwise be established from time to time by Benson's. Delinquent accounts are subject to continuing late charges at the prevailing rate sent by Benson's which, until changed in writing by Benson's is one and one-half percent (1½%) per month each month until paid in full. Any customer checks, which do not clear the bank, are subject to a $25.00 service charge plus bank service charges plus repayment of any cash or prepayment discounts given. The undersigned agrees to pay all costs of collection, including attorney's fees, should legal action be required to enforce this agreement.

Date: 1-17-11    Applicant: X _____

SIGNATURE
BRYAN  GORMAN
PRINTED NAME

_____    _____
WITNESS

X   KEITH  GORMAN

OFFICE USE ONLY

Approved Line of Credit: ___10K___

Terms Code: ___1% 10th   #H___

Salesperson: ___Greg___   #21

Comments/Conditions: _____

Approved By: ___DNB___

Selling Price: ___#2___

Account Code: ___224^___

Date of Approval: ___3/22/11___

## Benson's Lumber and Hardware Stores

P.O. Box 444 • Martin Street • Derry, NH 03038 • (603) 432-2531
Orchard View Drive • Londonderry, NH 03053 • (603) 432-9863

To Whom This May Concern:

I, _BRYAN P. GORMAN_ DBA _Southern END ROALTY LLC_
     Applicant Name                               Business Name

Authorize Benson's Lumber and Hardware, Inc. access to any and all credit information that pertains to my account with

_T.D. BANK_ .
   Bank Name

Date: _1-11-11_

Signed:

Witnessed:



Account Name: _Southern End Realty LLC_

Account # _____

### CHARGE AUTHORIZATION NAMES ON ACCOUNT

I authorize the following people to charge to my house account at Benson's Lumber and Hardware, Derry and Londonderry. In providing this list of authorized users, I agree to be responsible for all charges to my account. If no list is provided only the person who completed the credit application will be allowed to charge this account.

_Bryan P. Gorman_                    _____

_Keith M. Gorman_                    _____

_____                    _____

_____                    _____

_____                    _____

_____                    _____

_____                    _____

Name of person providing list _Bryan Gorman_ , Date _1-11-11_

Account updated by _____ , Date _____

_____ , Date _____

_____ , Date _____

## Fax (603) 432-2018



**Benson**
Lumber & Hardware
—— Since 1913 ——

Customer Name: ___Southern End Realty LLC___

Fax Number : ___978-957-7944___

E-Mail Address : _____     Contact: ___Bryan Gorman___

Please check off how you would like to receive your Invoices & Statements.

[ ] –Please send a copy of all invoices & credits via E-mail.

[ ] –Please send a copy of all invoices & credits via fax.

[ ] –Please send my monthly statement via E-mail.
     *Note: If we send via e-mail the invoices are not attached, you will just receive
       your statement.

[✗] –Please send my monthly statement via Fax.
     *Note: invoices will follow your statement if we send via fax.

Customer Signature: _____     Date: _____

## Section 4: Personal Guarantees
This section must be completed by the principals of all corporate applicants:

Whereas the Applicant is a corporation, and as an inducement for Benson's to extend the greatest line of credit possible, the following officers and/or partners and/or owners of Applicant hereby agree to personally and unconditionally guarantee this account. It is understood that this Guaranty shall be a continuing and irrevocable guaranty and indemnity for any indebtedness incurred by the Applicant. The undersigned hereby waive notice of default, demand for payment and all other notices and demands with respect hereof and consent to any modifications, extension or renewal of the credit and credit agreement hereby guaranteed.

SIGNED this __2 - 11 - 11__ day of _____, 20 __11__

WITNESS:

_____ 2/10/11 _____

GUARANTORS:

Individually _____

Individually _____

Individually _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

OFFICE USE ONLY

Approved Line of Credit: $15,000.00     Selling Price: _____

Terms Code: _____     Account Code: _____

Salesperson: _____

Comments/Conditions: _____

Approved By: _____     Date of Approval: _____

3

# EXHIBIT B

# PROMISSORY NOTE

$150,000.00

Dracut, Massachusetts
February _14_, 2020

FOR VALUE RECEIVED, the undersigned **SOUTHERN END REALTY, LLC**, a Massachusetts limited liability company of 1105 Lakeview Avenue, Dracut Massachusetts ("Maker"), promise to pay to the order of **BENSON LUMBER AND HARDWARE, INC.**, a New Hampshire business corporation of 6 Martin Street, Derry, New Hampshire 03038 ("Holder"), at 6 Martin Street, P.O. Box 444, Derry, New Hampshire, 03038 or such other place as the Holder shall designate in writing, the principal sum of **One Hundred Fifty Thousand and 00/100 ($150,000.00) Dollars**, due and payable on May 14, 2020, together with interest thereon at the rate of Zero (0%) percent per annum.  Interest shall be calculated on the basis of a 360-day year for actual days elapsed.

All principal and, if any, accrued unpaid interest shall, in all events, be due and payable on May 14, 2020. Payments shall be applied first to costs of collection, then to accrued interest, and then to principal reduction. The Maker shall have the right to prepay this Note without penalty at any time.

The Holder shall issue a partial release for each condominium unit secured by this Promissory Note, upon payment from Maker, with accrued interest for each such condominium unit, in the following amount:

| | |
|---|---|
| 44 Highland Street, Unit 1, Lowell, Massachusetts | $30,000.00 |
| 44 Highland Street, Unit 2, Lowell, Massachusetts | $30,000.00 |
| 42 Highland Street, Unit 1, Lowell, Massachusetts | $90,000.00 |

In addition to any other payments of principal and interest due under this Note, the Maker shall pay to the holder a late charge of ten (10%) of any required payment not received by the holder within ten (10) days after the payment is due.  If any payment is not received by the holder hereof within ten (10) days from the due date, then interest will accrue at the default rate of twenty-five (25%) percent per annum (based on a 360 day year), retroactive to the due date, until paid in full. The foregoing default interest rate shall automatically begin to accrue, without Notice to the Maker, on the entire outstanding principal balance of this note as of the date of the default and any subsequent invoice sent by the holder to the Maker calculating interest at the contract rate of interest shall not constitute a waiver by the holder of its right to collect interest at the default rate, notwithstanding the interest calculation set forth in such invoice.

The Maker agrees to pay all costs and expenses incurred by the holder hereof, including, all reasonable attorney's fees, in connection with the collection of this Note upon default, and to pay on all amounts not paid when due (pursuant to the terms hereof by acceleration, or otherwise).

At the option of the holder, this Note shall become immediately due and payable without notice or demand upon the occurrence at any time of any of the following events: (1) Default in any payment of principal or interest which is not cured within ten (10) days; (2) Default, beyond the applicable grace or cure period, in the performance or observance of the terms and conditions of the Mortgage and Security Agreement, and other instruments and documents of even date (including amendments and extensions thereof) securing this Note; (3) Default beyond any applicable grace or cure period in the payment and performance of any other liability or obligation of the Maker or of any endorser or guarantor of any liability or obligation of the Maker to the older; and (4) Service, pursuant to trustee process, upon the holder hereof of a writ in which the Holder is named as trustee of the Maker; (5) If the Maker or any endorser or guarantor hereof is a corporation, trust, or partnership, the liquidation, termination, or dissolution of any such organization; (6) If any party liable hereon, whether as maker, endorser, guarantor, surety or otherwise shall die, make an assignment for the benefit of creditors, or if a receiver of any such party's property shall be appointed, or if a petition in bankruptcy or other similar proceeding under any law for relief of debtors shall be filed by or against (if not dismissed or stayed within sixty (60) days in the event of an involuntary bankruptcy) any such party; (7) If there is a conveyance, including secondary financing, of all or any portion of, the mortgaged premises described in any mortgage securing the Note or any interest therein without prior approval of the holder; (8) Default under any other indebtedness which is secured by a mortgage on all or any portion of the premises described in the mortgage;  or (9) If any proceeding shall be instituted challenging the validity or priority of the mortgage securing this Note.

Each and every party liable hereon, either as maker, endorser, guarantor, surety, or otherwise, hereby (1) waives presentment, demand, protest, and notices (except specifically otherwise required) of every kind and description, and all suretyship defenses and defenses in nature thereof; (2) waives any defense based upon, and specifically assents to, any and all extensions and postponements of the time of payment and all other indulgences and forbearances which may be granted by the holder to any party liable hereon; (3) agrees to the addition or release of any other party or person primarily or secondarily liable; and (4) agrees to be  bound by all of the terms contained in this Note and agrees that the obligations and agreements of all such parties shall be joint and several.

No delay or omission on the part of the holder in exercising any right hereunder or any right under any instrument or agreement executed in connection herewith shall operate as a waiver of such right, or of any other right, of such holder, not shall any delay, omission or waiver on any one occasion be deemed to be a bar to, or waiver of, the same or any other right on any future occasion.

No single or partial exercise of any power hereunder or under any mortgage or security agreement securing this Note shall preclude other or future exercise thereof or the exercise of any other power. The holder hereof shall at all times have the right to proceed against any portion of the security held herefor in such order and in such manner as the holder may see fit, without waiving any rights with respect to any other security.

Subject to the applicable grace periods, all time of payment of principal, interest or any other monies due under or in respect to this note or under or in respect to any mortgage, security agreement or other instrument or agreement securing this note shall be of the strict essence.

Any default under this note or in the performance and observance of the provisions of any agreement pertaining thereto continuing after the applicable grace or cure period, if any, shall be deemed a default on all other notes, obligations and liabilities of Maker to the holder, whether now existing or hereafter arising, and any default on any other note, obligation or liability of Maker to the holder, whether now existing or hereafter arising, shall also be deemed a default under this note.

If any term or provision of this note, or any portion of any such term or provision, shall beheld invalid or against public policy, or if the application of the same to any person or circumstance is held invalid or against public policy, then, the remainder of this note (or the remainder of such term or provision) and the application thereof to other persons or circumstances shall not be affected thereby and shall remain valid and in full force and effect to the fullest extent permitted by law. No manager, member, trustee, beneficiary, stockholder, director, officer or employee of the holder shall have any personal liability to Maker. It is agreed that the holder may grant participations in this note or collaterally assign the same. All rights and obligations hereunder shall be governed by the laws of the Commonwealth of Massachusetts and this note is executed as and shall have the effect of a sealed instrument.

Notwithstanding any provision herein or in any instrument now or hereafter securing this note, the total liability for payments in the nature of interest shall not exceed the limitations now imposed by the applicable laws of the state whose laws are controlling on the subject as shall be determined by final order of a court of competent jurisdiction. The Maker hereby submits to the jurisdiction of the courts of the Commonwealth of Massachusetts for all matters in connection herewith as well as for all purposes in connection with any other relationship between the undersigned and the Lender and agrees that service of process may be effected by certified mail.

**JURY WAIVER.** **THE BORROWER AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THE AGREEMENT, THE OBLIGATIONS, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE**

NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE, OR HAS NOT BEEN, WAIVED.  THE BORROWER CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

THE UNDERSIGNED DOES HEREBY ATTEST, CERTIFY, REPRESENT, WARRANT AND COVENANT THAT NEITHER THE PREMISES NOR ANY PORTION THEREOF DESCRIBED IN ANY MORTGAGE SECURING THIS NOTE ARE USED OR ARE INTENDED TO BE USED BY THE UNDERSIGNED AS A DWELLING, OR AS A HOME, AND THAT THE PROCEEDS OF THIS TRANSACTION ARE SOLELY TO BE USED FOR COMMERCIAL AND BUSINESS PURPOSES AND NOT FOR AGRICULTURAL OR CONSUMER PURPOSES. AND THE UNDERSIGNED ACKNOWLEDGES THAT THIS ATTESTATION, CERTIFICATION, REPRESENTATION, WARRANT AND COVENANT HAS BEEN RELIED UPON BY THE HOLDER HEREOF.

Signed in the presence of:

SOUTHERN END REALTY, LLC

By: _____

KEITH M. GORMAN-MANAGER

By: _____

BRYAN P. GORMAN - MANAGER

Secured by a mortgage on condominium units located at 44 Highland Street, Unit 1; 44 Highland Street, Unit 2; and 42 Highland Street, Unit 1, Lowell, Massachusetts 01852.

# EXHIBIT C

## GUARANTY

For good and valuable consideration, the receipt and sufficiency of which are acknowledged, the undersigned (jointly and severally if more than one) unconditionally guaranties, in accordance with the terms hereof and without any prior written notice, the payment and performance of all of the Liabilities (as defined herein) of SOUTHERN END REALTY, LLC. (the "Borrower"), to BENSON LUMBER AND HARDWARE, INC. (the "Lender").

"Liability" and "Liabilities" include, without limitation, any and all liabilities, debts, and obligations of the Borrower to the Lender and any and all liabilities, debts, and obligations of every endorser, guarantor, and surety of the Borrower to the Lender, each of every kind, nature, and description, now existing or hereafter arising, excepting only personal loans to other guarantors. "Liabilities" also includes, without limitation, each obligation to repay all loans, advances, indebtedness, notes, obligations, overdrafts, and amounts now or hereafter at any time owing by the Borrower to the Lender (including all future advances or the like whether or not given pursuant to a commitment by the Lender), whether or not any of such are liquidated, unliquidated, primary, secondary, secured, unsecured, direct, indirect, absolute, contingent, or of any other type, nature, or description, or by reason of any cause of action which the Lender may hold against the Borrower. "Liabilities" also includes, without limitation, all notes and other obligations of the Borrower now or hereafter assigned to or held by the Lender, each of every kind, nature, and description. "Liabilities" also includes, without limitation, all interest and other amounts which may be charged to the Borrower and/or which may be due from the Borrower to the Lender from time to time; all fees and charges in connection with any account maintained by the Borrower with the Lender or any service rendered by the Lender; and all costs and expenses incurred or paid by the Lender in respect of any agreement between the Borrower and the Lender or instrument furnished by the Borrower to the Lender (including, without limitation, Costs of Collection, attorneys' reasonable fees, and all court and litigation costs and expenses). "Liabilities" also includes, without limitation, any and all obligations of the Borrower to act or to refrain from acting in accordance with the terms, provisions, and covenants of any agreement between the Borrower and the Lender or instrument furnished by the Borrower to the Lender including, without limitation, hazardous waste remediation or liability. As used herein, the term "indirect" includes without limitation, all obligations and liabilities which the Lender may incur or become liable for, on account of, or as a result of any transactions between the Lender and the Borrower including, without limitation, any which may arise out of any Letter of Credit or acceptance, or similar instrument issued or obligation incurred by the Lender for the account of the Borrower; any which may arise out of any action brought or threatened against the Lender by the Borrower, any guarantor or endorser of the Liabilities of the Borrower, or by any other person in connection with the Liabilities; and any obligation of the Borrower which may arise as endorser or guarantor of any third party, or as obligor to any third party which obligation has been endorsed, participated, or assigned to the Lender. The term "indirect" also refers to any direct or contingent liability of the Borrower to make payment towards any obligation held by the Lender (including, without limitation, on account of any industrial revenue bond) to the extent so held by the Lender.

"Costs of Collection" includes, without limitation, all attorneys' reasonable fees, and out-of-pocket expenses incurred by the Lender's attorneys, and all out-of-pocket costs incurred by the Lender after an Event of Default under any document evidencing or securing any Liability in the administration of the Liabilities, this Guaranty, and all other instruments and agreements executed in connection with or relating to the Liabilities including, without limitation, costs and expenses associated with travel on behalf of the Lender. Costs of Collection also includes, without limitation, all attorneys' reasonable fees, out-of-pocket expenses incurred by the Lender's attorneys, and all out-of-pocket costs and expenses incurred by the Lender, including, without limitation, costs and expenses associated with travel on behalf of the Lender, which costs and expenses are directly or indirectly related to or in respect of the Lender's efforts to preserve, protect, collect, or enforce the Liabilities and/or the Lender's Rights and Remedies or any of the Lender's rights and remedies against or in respect of the Borrower, any other guarantor or other person liable in respect of the Liabilities or any collateral granted to the Lender by the Borrower, such guarantor, or other person (whether or not suit is instituted in connection with such efforts). The Costs of Collection shall be added to the Liabilities of the Borrower to the Lender, as if such had been lent, advanced, and credited by the Lender to, or for the benefit of, the Borrower.

For said good and valuable consideration, the undersigned also shall indemnify, defend, and hold the Lender harmless of and from any claim brought or threatened against the Lender by the Borrower, the undersigned, any other guarantor or endorser of the Liabilities or any other person (as well as from attorneys' reasonable fees and expenses in connection therewith) on account of the Lender's relationship with the Borrower, the undersigned, or any other guarantor or endorser of the Liabilities (each of which may be defended, compromised, settled, or pursued by the Lender with counsel of the Lender's selection, but at the expense of the undersigned). This indemnity shall not apply in the event that the Borrower or any guarantor is successful in obtaining a final judgment against the Lender.

The undersigned will pay on demand interest on all amounts due to the Lender under this Guaranty, or arising under any documents, instruments, or agreements relative to any collateral securing this Guaranty, from the time the Lender first demands payment of this Guaranty at a rate equal to the highest rate chargeable to the Borrower after the earlier of (i) demand or (ii) the occurrence of any event of default.

Any and all deposits or other sums at any time credited by or due to the undersigned from the Lender or any of its banking or lending affiliates, or any bank acting as a participant under any loan arrangement between the Lender and the Borrower, and any cash, securities, instruments or other property of the undersigned in the possession of the Lender, or any of its banking or lending affiliates, or any bank acting as a participant under any loan arrangement between the Lender and the Borrower, whether for safekeeping or otherwise, or in transit to or from the Lender or any of its banking or lending affiliates or any such participant, or in the possession of any third party acting on the Lender's behalf (regardless of the reason the Lender had received same or whether the Lender has conditionally released the same) shall at all times constitute security for all of the Liabilities and for all obligations of the undersigned to the Lender and may be applied or set off against such Liabilities and against the obligations of the undersigned to the Lender including, without limitation, those arising hereunder, at any time

-2-

after a default (but prior to expiration of the applicable grace or cure period, if any) whether or not such are then due and whether or not the other collateral is then available to the Lender.

The obligations of the undersigned hereunder shall not be effected by any fraudulent, illegal, or improper act by the Borrower, nor by any release, discharge, or invalidation, by operation of law or otherwise, of the Liabilities, or by the legal incapacity of the Borrower, the undersigned, or any other person liable or obligated to the Lender for or on the Liabilities. Interest and Costs of Collection shall continue to accrue and shall continue to be deemed Liabilities guarantied hereby notwithstanding any stay to the enforcement thereof against the Borrower or disallowance of any claim therefor against the Borrower.

The within instrument incorporates all discussions and negotiations between the undersigned and the Lender concerning the guaranty and indemnification provided by the undersigned hereby. No such discussions or negotiations shall limit, modify, or otherwise affect the provisions hereof. No provision hereof may be altered, amended, waived, cancelled or modified, except by a written instrument executed, sealed, and acknowledged by a duly authorized officer of the Lender and the undersigned.

The undersigned waives presentment, demand, notice, and protest with respect to the Liabilities or this Guaranty, and further waives any delay on the part of the Lender, and further waives any right to require the Lender to pursue or to proceed against the Borrower or any collateral which the Lender might have been granted to secure the Liabilities or to secure the obligations of the undersigned hereunder, and further waives notice of acceptance of this Guaranty.

The obligations of the undersigned hereunder are primary, with no recourse necessary by the Lender against the Borrower or any collateral given to secure the Liabilities or against any other person liable for or on the Liabilities prior to proceeding against the undersigned hereunder. The undersigned assents to any indulgence or waiver which the Lender may grant or give the Borrower and/or any other person liable or obligated to the Lender for or on the Liabilities. The undersigned authorizes the Lender to alter, amend, cancel, waive, or modify any term or condition of the Liabilities and of the obligations of any other person liable or obligated to the Lender for or on the Liabilities, without notice to, or consent from, the undersigned. No compromise, settlement, or release by the Lender of the Liabilities or of the obligations of any such other person (whether or not jointly liable with the undersigned) and no release of any collateral securing the Liabilities or securing the obligations of any such other person shall affect the obligations of the undersigned hereunder. No action by the Lender which has been assented to herein shall affect the obligations of the undersigned to the Lender hereunder.

The undersigned shall not exercise any right of subrogation, reimbursement, indemnity, contribution, or the like (including any right to proceed upon any collateral granted by the Borrower to the undersigned) against the Borrower or any person liable or obligated for or on the Liabilities unless and until all of the Liabilities have been satisfied in full.

This instrument shall inure to the benefit of the Lender, its successors and assigns, shall be binding upon the heirs, successors, representatives, and assigns of the undersigned, and shall

–3–

apply to all Liabilities of the Borrower and any successor to the Borrower, including any successor by operation of law.

The rights, remedies, powers, privileges, and discretions of the Lender hereunder (hereinafter, the "Lender's Rights and Remedies") shall be cumulative and not exclusive of any rights or remedies which it would otherwise have. No delay or omission by the Lender in exercising or enforcing any of the Lender's Rights and Remedies shall operate as, or constitute, a waiver thereof. No waiver by the Lender of any of the Lender's Rights and Remedies or of any default or remedies under any other agreement with the undersigned, or of any default under any agreement with the Borrower, or any other person liable or obligated for or on the Liabilities, shall operate as a waiver of any other of the Lender's Rights and Remedies or of any default or remedy hereunder or thereunder. No exercise of any of the Lender's Rights and Remedies and no other agreement or transaction of whatever nature entered into between the Lender and the undersigned, the Lender and the Borrower, and/or the Lender and any such other person at any time shall preclude any other exercise of the Lender's Rights and Remedies. No waiver by the Lender of any of the Lender's Rights and Remedies on any one occasion shall be deemed a waiver on any subsequent occasion, nor shall it be deemed a continuing waiver. All of the Lender's Rights and Remedies and all of the Lender's rights, remedies, powers, privileges, and discretions under any other agreement or transaction with the undersigned, the Borrower, or any such other person shall be cumulative and not alternative or exclusive, and may be exercised by the Lender at such time or times and in such order of preference as the Lender in its sole discretion may determine.

This instrument and all documents which have been or may be hereinafter furnished by the undersigned to the Lender may be reproduced by the Lender by any photographic, photostatic, microfilm, microcard, miniature photographic, xerographic, or similar process, and the Lender may destroy the original from which such document was so reproduced. Any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

This instrument shall be governed, construed, and interpreted in accordance with the laws of The Commonwealth of Massachusetts. The undersigned submits to the jurisdiction of the courts of The Commonwealth of Massachusetts for all matters in connection herewith as well as for all purposes in connection with any other relationship between the undersigned and the Lender and agrees that service of process may be effected by certified mail. It is the intention of the undersigned that the provisions of the within Guaranty and indemnification be liberally construed to the end that the Lender may be put in as good a position as if the Borrower had promptly, punctually, and faithfully performed all Liabilities and the undersigned had promptly, punctually, and faithfully performed hereunder.

Any determination that any provision herein is invalid, illegal, or unenforceable in any respect in any instance shall not affect the validity, legality, or enforceability of such provision in any other instance and shall not affect the validity, legality, or enforceability of any other provision contained herein.

1305593v1/9051-3

The obligations of the undersigned hereunder shall remain in full force and effect and as to all Liabilities, without regard to any reduction of the Liabilities other than by the undersigned pursuant to this Guaranty, until the earlier of (a) ten (10) days following the actual receipt by the Lender at its office (presently 6 Martin Street, Derry, New Hampshire 03038) of written notice signed by the undersigned of the termination thereof, or (b) the delivery of written notice of termination dated and signed by a duly authorized officer of the Lender, which notice of termination includes specific reference to this provision. No termination hereof shall affect any Liability in existence or outstanding ten (10) days following the date of such actual receipt or delivery (including, without limitation, those which are contingent or not then due and those which arise out of any check, draft, item, or paper which was made, executed, or drawn prior to the expiration of such ten (10) days, even if received by the Lender thereafter) nor any obligation of the undersigned hereunder which by its terms includes any of the Liabilities of a contingent nature (including, without limitation, the indemnification provided for herein).

No trustee, beneficiary, stockholder, director, officer or employee of the Lender shall have any personal liability to any of the undersigned.

The undersigned certifies that the undersigned read this Guaranty prior to its execution.

It is intended that this Guaranty take effect as a sealed instrument this _14th_ day of February, 2020.

Signed in my Presence:

Witness:

_____          _____ 2-14-20
                                 KEITH M. GORMAN

# EXHIBIT D
## (Recorded Mortgage)

# Middlesex North Registry of Deeds

# Electronically Recorded Document

## This is the first page of this document - Do not remove

---

### Recording Information

| | |
|---|---|
| Document Number | : 7265 |
| Document Type | : MTG |
| Recorded Date | : February 18, 2020 |
| Recorded Time | : 12:30:23 PM |
| | |
| Recorded Book and Page | : 33842 / 262 |
| Number of Pages(including cover sheet) | : 29 |
| Receipt Number | : 872706 |
| Recording Fee | : $205.00 |

**Middlesex North Registry of Deeds**
**Richard P. Howe Jr., Register**
**360 Gorham Street**
**Lowell, Massachusetts 01852**
**978/322-9000**
**www.lowelldeeds.com**

## MORTGAGE AND SECURITY INSTRUMENT

KNOW ALL MEN BY THESE PRESENTS THAT **SOUTHERN END REALTY, LLC,** a Massachusetts limited liability company with a mailing address at 1105 Lakeview Avenue, Dracut Massachusetts, 01826  hereinafter called the "Mortgagor," for consideration paid, hereby grants to **BENSON LUMBER AND HARDWARE**, INC., a New Hampshire business corporation with principal offices at 6 Martin Street, Derry, Rockingham County, Massachusetts, hereinafter called the "Mortgagee", with MORTGAGE COVENANTS, to secure the indebtedness of Mortgagor in the principal sum of One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00) with interest and any other charges thereon as evidenced by a note of even date in the original principal amount of $150,000.00 from Mortgagor to Mortgagee (the "Note") payable at the times, in the manner and with interest as provided in the Note and also to secure the performance of all covenants and agreements of the Mortgagor contained herein, in that certain Loan Agreement of even date (the "Loan Agreement") and all other obligations of

1

Mortgagor to Mortgagee, now existing or hereafter arising (the "Obligations"), the land and premises situated at **44 Highland Street, Unit 1; 44 Highland Street, Unit 2; and 42 Highland Street, Unit 1, Lowell, Middlesex County, Massachusetts** and more particularly described in **Exhibit A**, together with the benefit of and subject to any matters therein set forth, together with the buildings and improvements now or hereafter erected thereon and all and singular the tenements, hereditaments and appurtenances thereunto belonging.

Also, the Mortgagor hereby grants to the Mortgagee a security interest in all of the goods, fixtures, furniture, furnishings, equipment, chattels and articles of personal property upon the above-described realty, including, without limitation, all building materials, supplies and equipment, heating apparatus, plumbing, furnaces, boilers, oil burners, refrigeration, air conditioning and sprinkler systems, awnings, screens, window shades, drapes, carpeting, incinerators, plants and shrubbery, and all other equipment, machinery, appliances, fittings and fixtures, whether personal property, inventory or fixtures, whether now owned or hereafter from time to time acquired by the Mortgagor together with all substitutions, replacements, additions, attachments, accessories, accretions, their component parts thereto or thereof, all other items of like property, whether now in existence or hereafter arising, and all of the rents, issues, income, revenues and profits derived from the above-described realty and all tax abatements relating to the mortgaged premises (all of which items or property are hereinafter referred to as the "Collateral"), it being the intention of the parties hereto that this instrument shall constitute a security agreement and a financing statement within the meaning of the Uniform Commercial Code with respect to so much of the Collateral as may be considered personal property, and that a security interest shall attach thereto as soon as the Mortgagor obtains any interest in any of the Collateral and before the Collateral becomes fixtures or before the Collateral is installed or affixed to other Collateral, for the benefit of the Mortgagee to secure

the indebtedness evidenced by the Note and secured by this Mortgage and Security Agreement (the "Mortgage"), and all other sums and charges which may become due hereunder or thereunder. The security interest held by the Mortgagee shall cover cash and non-cash proceeds of the collateral, but nothing contained herein shall be construed as authorizing, either expressly or by implication, the sale or other disposition of the Collateral by the Mortgagor, which sale or other disposition, except as hereinafter provided, is hereby expressly prohibited without the Mortgagee's prior written consent.

The Mortgagor covenants and agrees that, as of the execution hereof and upon the subsequent acquisition of such Collateral, now or hereafter used in the construction or operation of the realty hereby conveyed, the Mortgagor shall upon request by Mortgagee:

    a) provide the Mortgagee with a precise inventory of the same, as and when acquired;

    b) execute and deliver to the Mortgagee, if necessary, in form appropriate for recording and filing, financing statements on all such Collateral;

    c) provide to the Mortgagee such other assurances as may be required by the mortgagee to establish the Mortgagee's security interest in such Collateral; and

    d) execute, deliver and cause to be recorded and filed from time to time, without notice or demand, and at the Mortgagor's sole cost and expense, continuances and such other instruments as will maintain the Mortgagee's security in such Collateral; and Mortgagor hereby authorizes Mortgagee to file financing and continuation statements with respect to the Collateral without the signature of the Mortgagor whenever lawful.

In the event of default under the Mortgage, Mortgagee, pursuant to Section 9-604 of the Uniform Commercial Code, shall have the option of proceeding as to both real and personal property in accordance with its rights and remedies in respect of the real property, in which event the default provisions of the Uniform Commercial Code shall not apply. The parties agree that, in the event Mortgagee elects to proceed with respect to the Collateral separately from the real property, the requirement of the Uniform Commercial Code as to reasonable notice of any proposed sale or disposition of the Collateral shall be met if such notice is mailed to the Mortgagor, as hereinafter provided, at least ten (10) days prior to the time of such sale or disposition. Mortgagor agrees that, without the written consent of Mortgagee, Mortgagor will not remove or permit to be removed from the real property hereby conveyed, any of the Collateral other than for repairs or maintenance or unless the same is replaced immediately with unencumbered Collateral of a quality and value equal or superior to that which it replaces. All such replacements, renewals and additions shall become and be immediately subject to the security interest of this Mortgage and Security Agreement and be covered thereby. Mortgagor warrants and represents that all Collateral now is, and that all replacements thereof, substitutions therefor or additions thereto will be, free and clear of liens, encumbrances or security interests of others except for those encumbrances disclosed in a title insurance policy of even date herewith. The above-described realty and Collateral, together with any and all improvements now thereon, or from time to time thereon, and any additions thereto or replacements thereof, are herein collectively referred to as the "Property."

The Mortgagor covenants and agrees with the said Mortgagee, its successors and assigns as follows:

4

1. That the Mortgagor is lawfully seized in fee simple of the Property, and has good right, full power and lawful authority to mortgage and grant a security interest in the same in the manner aforesaid; that the Property is free and clear of all encumbrances except as set forth on Schedule B to the title insurance policy insuring this Mortgage and that the Mortgagor will make any further assurances of title that the Mortgagee may reasonably require.

2. To pay the Note hereby secured and interest thereon as the same shall become due and payable and also any other indebtedness that may accrue to the Mortgagee under the terms of the Note or this Mortgage.

3. That the Mortgagor will protect and maintain or cause to be maintained in good order, repair and condition, subject to reasonable wear and tear, at all times the Property, including without limitation, the buildings and structures now standing r hereafter erected thereon, and any additions and improvements thereto, and the utility services, the parking areas and access roads, damage from casualty expressly not excepted.

4. To carry with respect to the Property and its use such insurance as the Mortgagee may from time to time reasonably require and as may from time to time be required by any applicable Federal, State or local law or regulation; and all insurance (with evidence of payment of premiums thereon satisfactory to the Mortgagee) so required to be maintained, together with any other insurance with respect to the Property maintained by the Mortgagor, shall be deposited with, and, except for public liability coverage and any other coverage the Mortgagee may determine shall not be payable to it in case of loss, shall be payable in case of loss to the Mortgagee, as its interest may appear; all renewals or replacements of such insurance from time to time in force together with evidence of payment of premiums thereon satisfactory to the Mortgagee shall be delivered to the Mortgagee 30 days at least before the expiration date of then current

insurance; all insurance required as aforesaid to be maintained with respect to the Property shall be written by such companies, on such terms, in such form and for such periods and amounts as the Mortgagee shall from time to time reasonably approve; and no settlement on account of any loss covered by such insurance shall be effected without the consent of the Mortgagee.

5. The Mortgagor covenants that if the premises covered hereby, or any part thereof, shall be damaged by fire or other hazard against which insurance is held as herein provided, the amounts paid by any insurance company pursuant to the contract of insurance shall, to the extent of the indebtedness then remaining unpaid, be paid to the Mortgagee and, at the Mortgagee's option, may be applied by the Mortgagee in any one or more of the following ways: (1) apply the same or any part thereof upon the indebtedness secured hereby, whether such indebtedness then be matured or unmatured, (2) use or permit the use of the same or any part thereof to fulfill any of the covenants contained herein as the Mortgagee may determine, (3) use or permit the use of the same or any part thereof to replace or restore the Property to a condition satisfactory to the Mortgagee, or (4) release the same to the Mortgagor; and the Mortgagor thereby grants to the Mortgagee, in the event of foreclosure, full authority as attorney irrevocable of the Mortgagor to cancel such insurance and retain the return premiums thereof.

6. Any and all awards made by any public or quasi-public authorities on account of any condemnation for public use of or injury to the Property, are hereby assigned to the Mortgagee, and the Mortgagee, at its option, is hereby authorized, directed and empowered to collect and receive the proceeds of any such award and awards from the authorities making the same and to give proper receipts and acquaintances therefor, and may, at the Mortgagee's election, use such proceeds in any one or more of the following ways: (1) apply the same or any part thereof upon the indebtedness secured hereby, whether such

indebtedness then be matured or unmatured, (2) use or permit the use of the same or any part thereof to fulfill any of the covenants contained herein as the Mortgagee may determine, (3) use or permit the use of the same or any part thereof to replace or restore the Property to a condition satisfactory to the Mortgagee, or (4) release the same to the Mortgagor; and the Mortgagor hereby covenants and agrees to and with the Mortgagee, upon request by the Mortgagee, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning any such award to the Mortgagee free, clear and discharged of any and all encumbrances of any kind or nature whatsoever.

7. That the Mortgagor will not commit or suffer any strip or waste of the Property or any material violation of any law, regulation or ordinance including, without limitation, environmental laws, affecting the Property and will not commit or suffer any demolition, removal or material alteration of any of the buildings or improvements on the Property without the written consent of the Mortgagee, and will not violate nor suffer the violation of any restrictions, covenants or agreements, if any, of record affecting the Property.

8. To pay before the last day on which the same may be paid without interest, penalty, premium or default all taxes, assessments and charges of every nature and to whomever assessed that may now or hereafter be levied or assessed, or which by reason of non-payment become a lien upon the Property or any part thereof, upon the rents, issues, income or profits thereof, or upon the lien or estate created hereby, whether any or all of said taxes, assessments or charges be levied directly or indirectly or as excise taxes or as income taxes; and to thereupon submit to the Mortgagee such evidence of the due and punctual payment of such taxes, assessments, and charges as the Mortgagee may require; and also to pay all taxes, assessments or charges which may be levied on the indebtedness secured hereby, or the interest thereon.

9. To pay all sums, the failure to pay which may result in the acquisition of a lien prior to the lien of this Mortgage, before such prior lien may attach.

10. That if the Mortgagor shall neglect or refuse to keep in good repair the Property, to replace the same as herein agreed, to maintain the Property in accordance with applicable laws, to maintain and pay the premiums for insurance which may be required under paragraph 4 or to pay and discharge all taxes of whatsoever nature, assessments and charges of every nature and to whomever assessed, as provided for in paragraph 8, to pay the sums required by it to be paid in paragraph 9, above, to pay any balance due under any conditional agreement of sale on any articles or fixtures included as a part of the Property, or to pay any other sums required herein to be paid by it, the Mortgagee may, at its election, cause such repairs or replacements to be made, remove hazardous waste or take any other action necessary to assure compliance of the Property with applicable law, obtain such insurance or pay said taxes, assessments, charges and sums, and any amounts paid as a result thereof, together with interest thereon from the date of payment at the rate provided for in the Note, shall be immediately due and payable by the Mortgagor to the Mortgagee, and until paid shall be added to and become a part of said principal debt secured hereby, and the same may be collected as a part of said principal debt in any suit hereon or upon the Obligations; but no such advance shall be deemed to relieve the Mortgagor from any default hereunder or impair any right or remedy arising therefrom.

11. That, upon the request of the Mortgagee, the Mortgagor will deposit with the Mortgagee, on each day when any payment under the Note is required to be made, a sum determined by the Mortgagee to be sufficient to provide, in the aggregate, a fund adequate to pay any taxes, charges, sewer use fees, water rates, ground rents, assessments of every name and nature and any other obligation which may have or acquire priority over this Mortgage and which are

8

assessed or payable with reference to the Property, at least 10 days before the same become delinquent or accrue interest or penalty; and whenever the Mortgagee determines the sums accumulated under the provisions of this Section 11 to be insufficient to meet the obligation for which such deposits were made, the Mortgagor shall pay, on the demand of the Mortgagee, any amount required to cover the deficiency therein; every deposit may, at the option of the Mortgagee, be applied directly against the obligation with reference to which it was made, or, to the fullest extent permissible according to law, any other obligation of the Mortgagor secured hereby; such deposits may be commingled with other assets of the Mortgagee and, in the discretion of the Mortgagee, invested by the Mortgagee for its own account without any obligation to pay income from such investment, or interest on such deposits, to Mortgagor, or to account to Mortgagor for such income in any manner.

12. The Mortgagor represents that the Mortgagor has no knowledge of or has not received notification from any federal, state or other governmental authority of: (i) any potential, known, or threat of release of any hazardous material or oil on or from the Property, or (ii) the incurrence of any expense or loss by such governmental authority, or by any other person, in connection with the assessment, containment, or removal of any release, or threat of release, of any hazardous material or oil from the Property. The Mortgagor shall:

(i) not store (except in compliance with all laws, ordinances, and regulations pertaining thereto), or dispose of any hazardous material or oil on the Property;

(ii) take all such action, including, without limitation, the conducting of engineering tests (at the sole expense of the Mortgagor) to (x) confirm, upon request of Mortgagee, that no hazardous material or oil is or ever was stored on

9

the Property (except in compliance with all law, ordinances and regulations pertaining thereto); (y) to assess, contain, and remove any such hazardous material or oil on the Property; and (z) to qualify for any insurance program which may be available under applicable law, as amended;

(iii) provide the Mortgagee with written notice: (x) upon the Mortgagor's obtaining knowledge of any potential or known release, or threat of release, of any hazardous material or oil at or from the Property; (y) upon the Mortgagor's receipt of any notice to such effect from any federal, state, or other governmental authority; and (z) upon the Mortgagor's obtaining knowledge of any incurrence of any expense or loss by such governmental authority in connection with the assessment, containment, or removal of any hazardous material or oil for which expense or loss the Mortgagor may be liable or for which expense a lien may be imposed on the Property;

(iv) indemnify, defend, and hold the Mortgagee harmless of and from any claim brought or threatened against the Mortgagee by the Mortgagor, any guarantor or endorser of the Obligations, or any governmental agency or authority or any other person (as well as from attorneys' reasonable fees and expenses in connection therewith) on account of the presence of hazardous material or oil on the Property, the release of hazardous materials or oil on or from the Property, or the failure by the Mortgagor to comply with the terms and provisions hereof (each of which may be defended, compromised, settled, or pursued by the Mortgagee with counsel of the Mortgagee's selection, but at the expense of the Mortgagor). The within indemnification shall survive payment of the Obligations and/or any termination, release, or discharge executed by the Mortgagee in favor of the Mortgagor; and

(v) not permit any tenant to use any portion or all of the Property for the use, generation, treatment, storage or disposal of oil or hazardous material,

10

except to the extent that the presence of the materials is properly licensed and approved by all applicable governmental officials, if so required by law, and in accordance with all applicable laws and regulations. Notwithstanding the obtaining of licenses and permits, the Property shall not be leased to any tenant engaged in the business of storing or utilizing toxic or hazardous materials without the prior written consent of Lender. The Mortgagee shall have the option, but shall not be required, to undertake any action required of Mortgagor above, and Mortgagor shall promptly reimburse Mortgagee for all costs and expenses incurred by it in connection therewith, together with interest on such amounts at the rate specified in the Note.

13. That if any action or proceeding be commenced, excepting an action to foreclose this Mortgage or to collect the debt hereby secured, to which action or proceeding the holder of this Mortgage is made a party by reason of the execution of this Mortgage or the Note which it secures (except if joined as a result of Mortgagee's negligence or misconduct), or in which it becomes necessary in Mortgagee's reasonable opinion to defend the lien of this Mortgage, or the value of the Property secured hereby, all sums paid by the Mortgagee for the reasonable expense of any such litigation shall be paid by the Mortgagor, together with interest thereon from date of payment at the rate provided for in the Note, and any such sum and the interest thereon shall be immediately due and payable and be secured hereby, having the benefit of the lien hereby created, as a part thereof, and of its priority.

14. The Mortgagor hereby assigns, transfers, and sets over to the Mortgagee, as collateral security for the indebtedness evidenced by the Note and secured by this Mortgage, any and all leases and sums of money now due or hereafter becoming due from the leasing, letting or other use of the Property, said money to be collected and retained by the Mortgagor so long as there is no default in the making of any payment or in the performance of any conditions or covenant in

11

the Note or this Mortgage continuing beyond any applicable grace period. The Mortgagor agrees that written notice of such default continuing beyond any applicable grace period by the Mortgagee to any lessee, tenant or occupant of the Property shall authorize and require said lessee, tenant or occupant to pay all rents or other sums of money then due, and due thereafter, directly to the Mortgagee, until further notice by the Mortgagee. The Mortgagor further agrees that, in the event of any such default continuing beyond any applicable grace period, it will not assign, alter or amend, and that it will not assent to the assignment, alteration or amendment of, any lease in connection with the Property without the written consent of the Mortgagee. Mortgagor agrees, on demand by Mortgagee, to submit to Mortgagee for inspection all leases relating to the Property. The Mortgagee shall have the right, by the execution of suitable written instruments from time to time, to subordinate this Mortgage, and the rights of the Mortgagee hereunder, to any lease or leases from time to time in force with reference to the Property, and on the execution of any such instrument, this Mortgage shall be subordinate to the lease for which such subordination is applicable with the same force and effect as if such lease had been executed and delivered, and a notice thereof recorded to the extent required to give notice to third persons, prior to the execution, delivery and recording of this Mortgage.

15. That the Mortgagor shall not cancel any of the leases now or hereafter assigned to the Mortgagee pursuant to paragraph 14 above, nor terminate or accept a surrender thereof or reduce the payment of the rent thereunder or materially modify any of said leases or accept any prepayment of rent therein without first obtaining, on each occasion, the written approval of the Mortgagee, not to be unreasonably withheld or delayed.

16. To faithfully keep and perform all of the obligations of the landlord under all of the leases now or hereafter assigned to the Mortgagee pursuant to paragraph 14 above and not to permit to accrue to any tenant under any such lease any right to

12

prepaid rent pursuant to the terms of any lease other than the usual prepayment of rent as would result from the acceptance on the first day of each month of the rent for such month, security deposits and last month's rent according to the terms of the various leases.

17. The Mortgagor will not, without the consent of the Mortgagee, record or file and subordinate lien or mortgage against the Property; acquire any fixtures or equipment subject to any security interest, conditional sale, title retention arrangement or other charge or lien taking precedence over the lien hereof.

18. That if any law is hereafter passed by the United States of America or the Commonwealth of Massachusetts deducting from the value of land for the purpose of taxation any lien thereon, or changing in any way the laws now in force for the taxation of mortgages or debts secured by mortgage for Federal, State or local purposes, or the manner of collection of any such taxes, so as to affect adversely and materially the rights of the holder of this Mortgage notwithstanding compliance by the Mortgagor with all other provisions hereof, then the whole of the indebtedness hereby secured shall, at the election of the holder of this Mortgage, become due and payable ninety (90) days after written notice to the Mortgagor requiring payment of the mortgage debt, and it is hereby agreed that if such notice be given, the said debt shall become due, payable and collectible at the expiration of said ninety (90) days; provided, however, that such requirement of payment shall be ineffective if the Mortgagor is permitted by law to pay the whole of such tax in addition to all other payments hereunder, without any penalty thereby accruing to the Mortgagee, and if the Mortgagor does pay such tax prior to the date upon which payment is required by Mortgagee's said notice.

19. Subject to the rights of tenants, that the Mortgagee may enter the Property at any reasonable time to inspect the Property and to determine whether the Mortgagor is in compliance with its obligations under this Mortgage.

20. That upon any default, not cured within the applicable grace period, if any, in the payment of the indebtedness hereby secured, or of any installment thereof, or in the payment of the taxes, assessments or charges aforesaid, or if strip or waste be permitted on or collateral or removed from the Property without the written consent of the Mortgagee, or if there occurs any default under any other mortgage on the Property, not cured within the applicable grace period, which results in the acceleration of the indebtedness secured thereby, or if there shall occur the commencement of foreclosure or other enforcement proceedings under any other mortgage, or under any note or other obligation secured by any other mortgage, or upon any default in the performance or observance of any other act or thing herein required, or agreed to be done, not cured within the applicable grace period, or if any warranty or representation set forth in the Commitment Letter between Mortgagor and Mortgagee shall be materially untrue, the entire indebtedness hereby secured shall thereupon become due and payable and this Mortgage subject to foreclosure, at the option of the Mortgagee. The entire indebtedness secured hereby shall become immediately due, at the option of the Mortgagee, if the Mortgagor creates any encumbrance on the Property, or permits any encumbrance to attach against the Property, without the consent of the Mortgagee, even if such encumbrance is inferior to this Mortgage (except for real estate taxes and assessments until ten (10) days before any delinquency therein, delinquency with reference to such taxes and assessments being herein defined, for the purpose of this Mortgage, as meaning the time when, on the non-payment thereof, interest or penalties commence to accrue), or if by order of a court of competent jurisdiction a receiver or liquidator or trustee of the Mortgagor shall be appointed and shall not have been discharged within ninety

(90) days, or if by decree of such court the Mortgagor shall be adjudicated bankrupt or insolvent, or if a proceeding is filed by or against the Mortgagor under the Federal Bankruptcy Code or any other similar statute applicable to the Mortgagor as now or hereafter in effect, and if such proceeding has been filed against the Mortgagor and shall not be dismissed within ninety (90) days after such filing, or if such Mortgagor shall institute any proceeding for its dissolution or liquidation, or shall make an assignment or trust mortgage arrangements, so-called, for the benefit of creditors, or shall admit in writing inability to pay his or its debts generally as they become due, or shall consent to the appointment of a receiver or trustee or liquidator of Mortgagor. The entire indebtedness secured hereby shall become immediately due without grace period, at the option of the Mortgagee, if any material release (as defined in M.G.L. c. 21E) of hazardous materials or oil is discovered on the Property, whether said release of hazardous materials or oil was initiated on or off the Property. Unless specific reference to the contrary is set forth herein or in the Note or Loan Agreement, Mortgagor shall be entitled to the following grace periods to cure defaults:

> (i) monetary defaults: five (5) days.
>
> (ii) non-monetary defaults: thirty (30) days after written notice.

21. That whenever and as long as any default hereunder shall exist beyond any applicable grace period, the Mortgagee shall have the right to enter into and take possession of all or any part of the Property and to use, operate, manage and control the same and conduct the business thereof and collect the rents and profits therefrom as the Mortgagee shall deem appropriate. Upon every such entry, the Mortgagee may from time to time at the expense of the Mortgagor (which amount shall be payable by Mortgagor together with interest thereon from date of payment at the rate provided for in the Note and shall be secured hereby) make all such repairs, replacements, alterations, additions and

improvements to the Property as the Mortgagee may reasonably deem proper and may exercise all rights and powers of the Mortgagor, either in its name or otherwise as the Mortgagee shall determine. All rents and profits from the Property collected by the Mortgagee shall be applied to pay the expense of holding and operating the Property, or conducting the business thereof, of all maintenance thereof, of all repairs, replacements, alterations, additions, and improvements thereto and to make all payments which the Mortgagee may be required or may elect to make, if any, for taxes, assessments, insurance, and other proper charges upon the Property or any part thereof as well as charges and reasonable compensation for the services of the Mortgagee and of all persons engaged and employed in protecting or preserving the Property or conducting the operation of the Property. The remainder of such rents and profits, if any, shall be applied to the payment of all sums of interest then due to the Mortgagee on the indebtedness secured hereby and finally to principal prepayment. If and whenever prior to a foreclosure sale of the Property all arrears of required payments of interest and principal and all sums paid or advanced by the Mortgagee under any provision hereof and the reasonable and proper charges, expenses and liabilities of the Mortgagee, its agents, attorneys and counsel and all other sums then payable hereunder shall be paid or collected out of the Property and all defaults hereunder shall have been cured, the Mortgagee shall surrender to the Mortgagor the possession of the Property and thereupon the Mortgagor and the Mortgagee shall be restored to their former position and rights hereunder in respect to the Property, but no such surrender shall extend to or affect any subsequent default or impair any right consequent thereon. Provided, however, that in the exercise by the Mortgagee of the rights hereinabove in this paragraph contained, the Mortgagee shall not be required to waive any other rights which it may have acquired by reason of any prior default of the Mortgagor, including but not limited to the right of acceleration and foreclosure, to the end that, unless the Mortgagee so elects, the Mortgagee is not required to cure past defaults with the net proceeds received from the operation

16

of the Property under an exercise of the rights granted in this paragraph but may instead elect to apply such net proceeds to the indebtedness, as accelerated. The rights and remedies of the Mortgagee for any default under this Mortgage or any other instrument are not mutually exclusive, and may be exercised successively or concurrently and from time to time for as long as any default exists, and the failure of the mortgagee to exercise any such rights in any one or more instances, or the acceptance by the Mortgagee of partial payments of amounts in default secured hereby, shall not constitute a waiver of such default, but such right shall remain continuously in force; and acceleration of maturity, once claimed hereby by the Mortgagee, may, at the Mortgagee's option, be rescinded by written acknowledgment to that effect without waiving the default or any rights, including the right to accelerate once again, with respect thereto; moreover, the tender and acceptance of partial payment of amounts in default after acceleration, or the commencement of any foreclosure action, shall not in any way affect, rescind or terminate such acceleration of maturity or such foreclosure action. The provisions of this paragraph are supplementary to the rights granted by law to the Mortgagee to enter upon and take possession of the Property or any part thereof for breach of covenant or condition of this Mortgage and to foreclose the same. Anyone dealing with the Mortgagee may rely conclusively upon a certificate by the Mortgagee that any notice of default required by this paragraph was given and that the action required of the Mortgagor to cure the default was not taken or prosecuted as herein provided.

22. That if the Mortgagee, following an event of default on the part of the Mortgagor which remains uncured after any applicable grace period, elects to foreclose this Mortgage under the Statutory Power of Sale contained herein and to thereby sell the Property at public auction, then at any foreclosure sale, any combination or all of the Property or security given to secure the indebtedness secured hereby may be offered for sale for one total price, and the proceeds of

such sale accounted for in one account without distinction between the items of security or without assigning to them any proportion of such proceeds, the Mortgagor hereby waiving the application of any doctrine of marshalling; and, in case the Mortgagee, in the exercise of the power of sale herein given, elects to sell in parts or parcels, said sales may be held from time to time, and the power shall not be fully executed until all of the Property not previously sold shall have been sold.

23. That the Mortgagor shall have the right to contest by appropriate legal proceeding, but without cost or expense to the Mortgagee, the validity of any laws, ordinances, orders, rules and regulations affecting the Property if compliance therewith may legally be held in abeyance without the incurring of any charge, lien or liability against the Property, and the Mortgagor may postpone compliance therewith until the final determination of any such proceedings, provided they shall be prosecuted with due diligence and dispatch, and if any lien or charge is incurred, the Mortgagor may, nevertheless, make the contest and delay compliance, provided the Mortgagee is furnished with security, reasonably satisfactory to it against any loss or injury by reason of such noncompliance or delay.

24. That from time to time on the request of the Mortgagee, the Mortgagor shall furnish a written statement, signed and, if requested, acknowledged, setting forth the amount of the indebtedness which the Mortgagor acknowledges to be due on the Obligations and under this Mortgage, specifying any claims of off-set or defense which the Mortgagor asserts against the indebtedness secured hereby or any obligations to be paid or performed hereunder, and the then state of facts relative to the condition of the Property.

25. That wherever notice, demand or a request may properly be given to the Mortgagor under this Mortgage, the same shall always be sufficient to serve as a notice, demand or request hereunder if in writing and posted in the United States

18

Mail by registered or certified mail, addressed to the Mortgagor at the address given in this Mortgage as the Mortgagor's address or the business address of the Mortgagor last known to the Mortgagee hereof; and any such notice, demand or request shall be treated as having been given two business days after such deposit in the United States Mail; and a notice so addressed shall always be a sufficient notice, notwithstanding a change in the ownership of the equity of redemption of the Property, whether or not consented to by the Mortgagee; and where more than one person or entity constitutes the Mortgagor, one notice sent to the address given in the Mortgage as the Mortgagor's address, or the last known business address of any one of them, shall constitute sufficient notice to all.

26. That the Mortgagor shall not dissolve or permit its dissolution without the consent of the Mortgagee; nor shall the Mortgagor voluntarily transfer, nor suffer or permit the transfer of, whether by operation of law or otherwise, the legal or equitable interest in the equity of redemption in the Property, or any part thereof; nor shall the Mortgagor suffer the transfer of any equitable or beneficial interest in the Mortgagor; and in the event the ownership of the Property or any part thereof becomes vested in any person or entity other than the Mortgagor, with or without consent, the Mortgagee may, without notice to the Mortgagor, deal with such successor or successors in interest with reference to this Mortgage and the indebtedness and other obligations secured hereby in the same manner as with the Mortgagor, without in any way affecting or discharging the Mortgagor's liability hereunder or the indebtedness or other obligations hereunder secured; and no forbearance on the part of the Mortgagee and no extension of the time for the payment, the performance of any of the obligations of the Mortgagor as set forth herein or other indulgences shall operate to release, discharge, modify, change or affect the liability of the Mortgagor herein, either in whole or in part.

27. That if at any time any law or court decree prohibits the performance of any

19

obligation undertaken herein by the Mortgagor, or provides that any amount to be paid hereunder by the Mortgagor with respect to something other than principal or interest under the Note must be credited against the Mortgagor's Note, the Mortgagee shall have the right, on 90 days' prior notice to the Mortgagor, to require payment in full of the entire indebtedness secured hereby.

28. That if the Mortgagor shall obtain from a lessee or occupant of the Property, or a part thereof, a deposit to secure such lessee's or occupant's obligations, such funds, if so requested by the Mortgagee, shall be deposited with the Mortgagee in an account which shall be governed by the terms of Section 11 of this Mortgage to the extent not inconsistent with the provisions of the lease or agreement under which such deposit is made; but any such deposit shall be returned to the Mortgagor when required, by the terms of any such lease or agreement, to be paid over to the lessee or occupant.

29. If this Mortgage, by its terms, is now, or at any time becomes, subject or subordinate to a prior mortgage, the Mortgagor shall not, without the consent of the Mortgagee, agree to the modification, amendment or extension of the terms or conditions of such prior mortgage or the note or other obligation secured thereby.

30. Provided that Mortgagor is not in default hereunder, and or no event has occurred which, with the passage of time or the giving of notice, would constitute an Event of Default, Mortgagee agrees to deliver a discharge of this Mortgage (or, if this Mortgage now or hereafter, covers additional real estate, a partial release) of this Mortgage of the real estate described in Exhibit A attached hereto) upon (i) payment to the Mortgagee of good funds equal to all accrued but unpaid interest and principal under the Note.

31. In case any one or more of the provisions of this Mortgage are held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not limit or impair enforcement of any other provision hereof. The word "Mortgagor," as used herein, shall mean the party named at the beginning of this instrument as the Mortgagor, and any subsequent owner or owners of the equity of redemption of the Property. The word "Mortgagee," as used herein, shall mean the Mortgagee named at the beginning of this instrument, and any subsequent holder or holders of this Mortgage.

No trustee, beneficiary, stockholder, director, officer or employee of Mortgagee shall have any personal liability to Mortgagor and Mortgagor agrees to look solely to the assets of Mortgagee in connection with any claim made in connection with the loan secured by this Mortgage. All the covenants and agreements of the Mortgagor herein contained shall constitute covenants running with the land and shall be binding upon the Mortgagor and the successors and assigns of the Mortgagor.

This Mortgage is upon the STATUTORY CONDITION and upon the further condition that all covenants and agreements of the Mortgagor contained herein and in the Note shall be kept and fully performed, for any breach of which, or for any breach of any of the covenants or conditions contained in any prior mortgage or subordinate mortgage (no consent to which is hereby granted or implied), or under the notes or obligations secured thereby, the Mortgagee hereof shall have the STATUTORY POWER OF SALE.

Executed as a sealed instrument this 14th day of February, 2020.

SOUTHERN END REALTY, LLC

By: _____

KEITH M. GORMAN, Manager

By: _____

BRYAN P. GORMAN, Manager

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

On this 17th day of February, 2020, before me, the undersigned Notary Public, personally appeared KEITH M. GORMAN and BRYAN P. GORMAN, MANAGER, and proved to me by satisfactory evidence of identification, being: xx driver's license or other state or federal governmental document bearing a photographic image, □ oath or affirmation of a credible witness known to me who knows the above signatory, or □ my own personal knowledge of the identity of the signatory, to be the person whose name is signed above, and acknowledged the foregoing to be signed by them voluntarily for its stated purpose as Managers of SOUTHERN END REALTY, LLC.

Notary Public-_____

My commission expires:_____

22

## Exhibit A

**FIRST UNIT:**  A certain condominium unit located in Lowell, Middlesex County, Massachusetts known as **44 Highland Street, Unit 1** (the "Unit") in Southern Estates Condominium (the Condominium"), a condominium established pursuant to Massachusetts General Laws, Chapter 183A, by Master Deed dated November 25, 2019 and recorded with the Middlesex North Registry of Deeds at Book 33609, Page 194; and thereafter amended by the First Amendment to Master Deed of the Southern Estates Condominium, dated January 13, 2020 and recorded with Middlesex North District Registry of Deeds in Book 33743, Page 285 (hereinafter the "Master Deed").

The Unit contains **2,926** square feet, more or less, and is laid out as shown on the floor plans of the Condominium recorded with the Master Deed, as subsequently amended, at Plan Book 247, Plan 31, to which is affixed a verified statement in the form required by Section 8 of said Chapter 183A (hereinafter the "Master Deed Site Plan").

The Unit has a mailing address of:   **44 Highland Street, Unit 1, Lowell, Massachusetts 01852**.

The Unit is conveyed together with:

1. An undivided **16.25** percentage interest in the common areas and facilities of the Condominium as set forth in Exhibit B of the Master Deed, and as may be amended pursuant to the terms of the Master Deed.

2. The exclusive right to use the Exclusive Use Area(s) set forth and designated on the Master Deed Site Plan, and subject to the terms and conditions of the Master Deed recorded at said Registry of Deeds in Plan Book 247, Plan 31.

3. All other rights, easements, agreements, interests and provisions contained in the Declaration of Trust and By-law of the Southern Estates Condominium dated November 25, 2019 and recorded with said Registry of Deeds at Book 33609, Page 214 (the "Declaration of Trust"), and the By-Laws (the "By-Laws') and Rules and Regulations (the "Rules and Regulations") adopted pursuant thereto, as any of the same may be amended from time to time pursuant to the provisions thereof;

4. Any and all easements, reservations, covenants and restrictions of record.

The Unit is conveyed subject to and with the benefit of:

1. The provisions of said Chapter 183A as the same may be amended from  time to time;

2.  The provisions of the Master Deed, the provisions of the Declaration of Trust, the By-Laws and the Rules and Regulations, and the matters noted and depicted on the Master Deed Site Plan and floor plans of the condominium, in each case as the same may be amended from time to time pursuant to the terms thereof;

3.  Real estate taxes assessed against the Unit and the Common Areas and Facilities which are not yet due and payable;

4.  Any and all easements, reservations, covenants, restrictions and other matters of record insofar as are now in full force and applicable including, without limitation:

    a.  Easements and restrictions of record and all easements of record contained on a plan entitled "'Condominium Site & Unit Plans; Southern Estates, Lowell, Massachusetts' prepared by Land plex Civil Engineering and Surveying; Dated: October 31, 2019; Scale: 1'= As Noted", and recorded at said Registry of Deeds in Plan Book 247, Plan 31.

5.  The provisions of existing building and zoning laws; and

6.  Any and all rights, restrictions, easement, and agreements of record, in any, insofar as are now in force and applicable. The above unit are also subject to a Special Permit and Site Plan Approval issued by the City of Lowell, Massachusetts; easements for utility and telephone services granted to any public utility or telephone company by the Declarant, whether granted heretofore or hereafter, to the extent that the same are now in force and applicable. The Trustee(s) of the Condominium Trust shall have right to grant permits, licenses and easements over the common areas and facilities for utilities and other purposes reasonably necessary of useful for the proper maintenance or operation of the condominium project.

The Unit shall be used only for residential dwelling purposes, as more set forth in Section 9 of the Master Deed.

The rights, agreements, easements, restrictions, provisions and interests set forth herein, together with any amendments, thereto shall constitute covenants running with the land and shall enure to the benefit of said land.

Meaning and intending to convey a portion of the same premises as conveyed to SOUTHERN END, LLC by deed of Rosemary E. Noon, et al, recorded on Mary 18, 2018 and recorded with the Middlesex North District Registry of Deeds in Book 32083, Page 14.

**SECOND UNIT:** A certain condominium unit located in Lowell, Middlesex County, Massachusetts known as **42 Highland Street, Unit 1** (the "Unit") in Southern Estates Condominium (the Condominium"), a condominium established pursuant to Massachusetts General Laws, Chapter 183A, by Master Deed dated November 25, 2019 and recorded with the Middlesex North Registry of Deeds at Book 33609, Page 194; and thereafter amended by the First Amendment to Master Deed of the Southern Estates Condominium, dated January 13, 2020 and recorded with Middlesex North District Registry of Deeds in Book 33743, Page 285 (hereinafter the "Master Deed").

The Unit contains **3,294** square feet, more or less, and is laid out as shown on the floor plans of the Condominium recorded with the Master Deed, as subsequently amended, at Plan Book 247, Plan 31, to which is affixed a verified statement in the form required by Section 8 of said Chapter 183A (hereinafter the "Master Deed Site Plan").

The Unit has a mailing address of: **42 Highland Street, Unit 1, Lowell, Massachusetts 01852.**

The Unit is conveyed together with:

1. An undivided **17.5** percentage interest in the common areas and facilities of the Condominium as set forth in Exhibit B of the Master Deed, and as may be amended pursuant to the terms of the Master Deed.

2. The exclusive right to use the Exclusive Use Area(s) set forth and designated on the Master Deed Site Plan, and subject to the terms and conditions of the Master Deed recorded at said Registry of Deeds in Plan Book 247, Plan 31.

3. All other rights, easements, agreements, interests and provisions contained in the Declaration of Trust and By-law of the Southern Estates Condominium dated November 25, 2019 and recorded with said Registry of Deeds at Book 33609, Page 214 (the "Declaration of Trust"), and the By-Laws (the "By-Laws') and Rules and Regulations (the "Rules and Regulations") adopted pursuant thereto, as any of the same may be amended from time to time pursuant to the provisions thereof;

4. Any and all easements, reservations, covenants and restrictions of record.

The Unit is conveyed subject to and with the benefit of:

1. The provisions of said Chapter 183A as the same may be amended from time to time;

2. The provisions of the Master Deed, the provisions of the Declaration of Trust, the By-Laws and the Rules and Regulations, and the matters noted and depicted on the Master Deed Site Plan and floor plans of the condominium,

in each case as the same may be amended from time to time pursuant to the terms thereof:

3. Real estate taxes assessed against the Unit and the Common Areas and Facilities which are not yet due and payable;

4. Any and all easements, reservations, covenants, restrictions and other matters of record insofar as are now in full force and applicable including, without limitation:

   b. Easements and restrictions of record and all easements of record contained on a plan entitled "'Condominium Site & Unit Plans; Southern Estates, Lowell, Massachusetts' prepared by Land plex Civil Engineering and Surveying; Dated: October 31, 2019; Scale: 1'= As Noted", and recorded at said Registry of Deeds in Plan Book 247, Plan 31.

5. The provisions of existing building and zoning laws; and

6. Any and all rights, restrictions, easement, and agreements of record, in any, insofar as are now in force and applicable. The above unit are also subject to a Special Permit and Site Plan Approval issued by the City of Lowell, Massachusetts; easements for utility and telephone services granted to any public utility or telephone company by the Declarant, whether granted heretofore or hereafter, to the extent that the same are now in force and applicable. The Trustee(s) of the Condominium Trust shall have right to grant permits, licenses and easements over the common areas and facilities for utilities and other purposes reasonably necessary of useful for the proper maintenance or operation of the condominium project.

The Unit shall be used only for residential dwelling purposes, as more set forth in Section 9 of the Master Deed.

The rights, agreements, easements, restrictions, provisions and interests set forth herein, together with any amendments, thereto shall constitute covenants running with the land and shall enure to the benefit of said land.

Meaning and intending to convey a portion of the same premises as conveyed to SOUTHERN END, LLC by deed of Rosemary E. Noon, et al, recorded on Mary 18, 2018 and recorded with the Middlesex North District Registry of Deeds in Book 32083, Page 14.

**THIRD UNIT:** A certain condominium unit located in Lowell, Middlesex County, Massachusetts known as **44 Highland Street, Unit 2** (the "Unit") in Southern Estates Condominium (the Condominium"), a condominium established pursuant to Massachusetts General Laws, Chapter 183A, by Master Deed dated November 25, 2019

and recorded with the Middlesex North Registry of Deeds at Book 33609, Page 194; and thereafter amended by the First Amendment to Master Deed of the Southern Estates Condominium, dated January 13, 2020 and recorded with Middlesex North District Registry of Deeds in Book 33743, Page 285 (hereinafter the "Master Deed").

The Unit contains **2,926** square feet, more or less, and is laid out as shown on the floor plans of the Condominium recorded with the Master Deed, as subsequently amended, at Plan Book 247, Plan 31, to which is affixed a verified statement in the form required by Section 8 of said Chapter 183A (hereinafter the "Master Deed Site Plan").

The Unit has a mailing address of: **44 Highland Street, Unit 2, Lowell, Massachusetts 01852**.

The Unit is conveyed together with:

1. An undivided **16.25%** percentage interest in the common areas and facilities of the Condominium as set forth in Exhibit B of the Master Deed, and as may be amended pursuant to the terms of the Master Deed.

2. The exclusive right to use the Exclusive Use Area(s) set forth and designated on the Master Deed Site Plan, and subject to the terms and conditions of the Master Deed recorded at said Registry of Deeds in Plan Book 247, Plan 31.

3. All other rights, easements, agreements, interests and provisions contained in the Declaration of Trust and By-law of the Southern Estates Condominium dated November 25, 2019 and recorded with said Registry of Deeds at Book 33609, Page 214 (the "Declaration of Trust"), and the By-Laws (the "By-Laws') and Rules and Regulations (the "Rules and Regulations") adopted pursuant thereto, as any of the same may be amended from time to time pursuant to the provisions thereof;

4. Any and all easements, reservations, covenants and restrictions of record.

The Unit is conveyed subject to and with the benefit of:

1. The provisions of said Chapter 183A as the same may be amended from time to time;

2. The provisions of the Master Deed, the provisions of the Declaration of Trust, the By-Laws and the Rules and Regulations, and the matters noted and depicted on the Master Deed Site Plan and floor plans of the condominium, in each case as the same may be amended from time to time pursuant to the terms thereof:

3. Real estate taxes assessed against the Unit and the Common Areas and

Facilities which are not yet due and payable;

4. Any and all easements, reservations, covenants, restrictions and other matters of record insofar as are now in full force and applicable including, without limitation:

   c. Easements and restrictions of record and all easements of record contained on a plan entitled "'Condominium Site & Unit Plans; Southern Estates, Lowell, Massachusetts' prepared by Land plex Civil Engineering and Surveying; Dated: October 31, 2019; Scale: 1'= As Noted", and recorded at said Registry of Deeds in Plan Book 247, Plan 31.

5. The provisions of existing building and zoning laws; and

6. Any and all rights, restrictions, easement, and agreements of record, in any, insofar as are now in force and applicable. The above unit are also subject to a Special Permit and Site Plan Approval issued by the City of Lowell, Massachusetts; easements for utility and telephone services granted to any public utility or telephone company by the Declarant, whether granted heretofore or hereafter, to the extent that the same are now in force and applicable. The Trustee(s) of the Condominium Trust shall have right to grant permits, licenses and easements over the common areas and facilities for utilities and other purposes reasonably necessary of useful for the proper maintenance or operation of the condominium project.

The Unit shall be used only for residential dwelling purposes, as more set forth in Section 9 of the Master Deed.

The rights, agreements, easements, restrictions, provisions and interests set forth herein, together with any amendments, thereto shall constitute covenants running with the land and shall enure to the benefit of said land.

Meaning and intending to convey a portion of the same premises as conveyed to SOUTHERN END, LLC by deed of Rosemary E. Noon, et al, recorded on Mary 18, 2018 and recorded with the Middlesex North District Registry of Deeds in Book 32083, Page 14.

# **EXHIBIT D**

## **(Assignment of Plans)**

# Middlesex North Registry of Deeds

# Electronically Recorded Document

This is the first page of this document - Do not remove

## Recording Information

| | |
|---|---|
| Document Number | : 7266 |
| Document Type | : ASM |
| Recorded Date | : February 18, 2020 |
| Recorded Time | : 12:30:23 PM |
| Recorded Book and Page | : 33842 / 291 |
| Number of Pages(including cover sheet) | : 3 |
| Receipt Number | : 872706 |
| Recording Fee | : $105.00 |

**Middlesex North Registry of Deeds**
**Richard P. Howe Jr., Register**
**360 Gorham Street**
**Lowell, Massachusetts 01852**
**978/322-9000**
**www.lowelldeeds.com**

## ASSIGNMENT OF PLANS, PURCHASE AND SALES AGREEMENTS, SPECIFICATIONS AND APPROVALS

This Assignment made as of the 14ᵗʰ of February, 2020, from **SOUTHERN END REALTY, LLC,** a Massachusetts limited liability company authorized to do business within the Commonwealth of Massachusetts and having an address of 1105 Lakeview Avenue, Dracut, Massachusetts 01826 (the **"Borrower"**) to **Benson Lumber and Hardware, Inc.,** a New Hampshire business corporation located at 6 Martin Street, Derry, New Hampshire 03038 (the **"Lender"**)

### W I T N E S S E T H:

WHEREAS,  Lender agreed to loan Borrower **$150,000.00**;

WHEREAS,  in conjunction with said Loan, Borrower has granted Lender certain rights to assume control of the construction and to complete the same in the event of default under the Loan Documents;

WHEREAS,  Borrower wishes to assign to Lender certain rights in connection with the Plans to be used by the Borrower;

WHEREAS,  Borrower wishes to assign to Lender certain rights in connection with all Permits, Licenses and Approvals (the "Approvals"), including all present and future purchase and sales agreements heretofore and hereafter issued to Borrower from time to time with respect to the improvement, maintenance, and/or operation of the Premises located at 44 Highland Street, Unit 1, Lowell, Massachusetts 01852; 44 Highland Street, Unit 2, Lowell, Massachusetts 01852; and 42 Highland Street, Unit 1, Lowell, Massachusetts 01852 (the "Project");

NOW THEREFORE, for One Dollar ($1.00) and other good and valuable consideration paid by the Lender to the Borrower, the receipt and sufficiency of which is hereby acknowledged by the Borrower, Borrower hereby assigns to Lender all of its right, title and interest in and to the present and future purchase and sales agreement(s), Plans and the Approvals necessary to complete the construction of the Project, located in Massachusetts and to maintain and operate the Project thereafter, said rights now to be exercised until there exists a default by the undersigned under the Loan Documents. Upon the occurrence of the same, Lender shall have the immediate right to take possession of all Plans, all drawings made in connection herewith, and all Approvals and to exercise all rights of Borrower with respect to such Plans, drawings and Approvals. Lender assumes no liability or obligation to Borrower by virtue of this Assignment or by the exercise of any rights hereunder (including, without limitation, any liability for defective or inappropriate design or engineering) and Borrower agrees to indemnify, defend and hold harmless Lender from any liability arising out of the same, except for liability occasioned by the willful wrongdoing of Lender or its representatives.

1

The undersigned warrants and represents that the Plans and the Approvals submitted to Lender or to be submitted to Lender in connection with the loan are or shall be, full and complete and satisfactory to complete the contemplated construction and improvements and to allow the contemplated use of the Project; that the undersigned is the owner or beneficiary of the Plans and Approvals; that it has the legal right to assign and deliver all such Plans and Approvals to Lender as required hereunder and to permit Lender to exercise the rights granted herein; that the undersigned has not made and will not make any other assignment thereof.

Any action or proceedings to enforce this Assignment will be taken by Lender either in its name or in the name of the undersigned, as it may deem necessary. This Assignment shall be binding upon the undersigned, its heirs, successors, and assigns.

IN WITNESS WHEREOF, This Assignment has been duly executed under seal as of the first date written above.

**SOUTHERN END REALTY, LLC.**

BY: **KEITH M. GORMAN-MANAGER**

BY: **BRYAN P. GORMAN-MANAGER**

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

On this _14_ day of February, 2020, before me, the undersigned Notary Public, personally appeared **KEITH M. GORMAN and BRYAN P. GORMAN, Managers of SOUTHERN END REALTY, LLC.,** each proved to me through satisfactory evidence of identification, which consisted a valid Massachusetts drivers license, to be the persons whose names are signed on the preceding or attached document, and acknowledged to me that they signed it voluntarily for its stated purpose on behalf of **SOUTHERN END REALTY, LLC.**

MY COMMISSION EXPIRES:

2

# EXHIBIT D
## (Recorded Assignment of Leases and Rents)

# Middlesex North Registry of Deeds

# Electronically Recorded Document

## This is the first page of this document - Do not remove

### Recording Information

| | |
|---|---|
| Document Number | : 7267 |
| Document Type | : ASM |
| Recorded Date | : February 18, 2020 |
| Recorded Time | : 12:30:23 PM |
| | |
| Recorded Book and Page | : 33843 / 1 |
| Number of Pages(including cover sheet) | : 17 |
| Receipt Number | : 872706 |
| Recording Fee | : $105.00 |

**Middlesex North Registry of Deeds**
**Richard P. Howe Jr., Register**
**360 Gorham Street**
**Lowell, Massachusetts 01852**
**978/322-9000**
**www.lowelldeeds.com**

ASSIGNMENT OF LEASES & RENTS

ASSIGNMENT, made as of the 14ᵗʰ day of February, 2020 by SOUTHERN END REALTY, LLC, a Massachusetts limited liability company of 1105 Lakeview Avenue, Dracut, Massachusetts, 01826 (referred to as the "Borrower"), to Benson Lumber and Hardware, Inc., a New Hampshire business corporation, of 6 Martin Street, Derry, New Hampshire 03038 (together with its successors and assigns, "Lender").

WHEREAS, this Assignment of Leases and Rents is executed and delivered in connection with and as security for that certain Promissory Note dated as of the date hereof delivered by the Borrower to Lender in the original principal amount of One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00) (the "Note"), and that certain Mortgage and Security Agreement of even date and recorded herewith (the "Mortgage") delivered by Borrower for the benefit of Lender, by which the premises known as 44 Highland Street, Unit 1, Lowell, Massachusetts 01852; 44 Highland Street, Unit 2, Lowell, Massachusetts 01852; 42 Highland Street, Unit 1, Lowell, Massachusetts 01852, as more particularly described in Exhibit A attached hereto (the "the Property") are mortgaged to Lender. The Mortgage, the Note, the Loan Agreement, and all other documents or instruments executed by Borrower and delivered in connection therewith, as the same may be amended from time to time, are collectively referred to herein as the "Loan Documents".

1.    GRANTING CLAUSES: For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in order to secure further the prompt payment of all sums due, and the performance of all of the other obligations under the Note and the other Loan Documents and all other obligations of Borrower to Lender (collectively, the "Obligations"), Borrower does hereby irrevocably and absolutely grant, convey, assign, transfer and set over unto Lender (i) all right, title and interest of Borrower in, to and under all leases, subleases, licenses, tenancies, occupancies, concessions or agreements of any sort which cover or affect all or any portion of the Property, now existing or which Borrower may from time to time hereafter enter into during the term of this Assignment, whether written or oral, together with all modifications, renewals and extensions thereof (such leases, subleases, licenses, tenancies, occupancies, concessions and agreements, modifications, renewals and extensions being hereinafter collectively referred to as the "Leases" and each individually as a "Lease"); (ii) all of the rents, royalties, revenues, fees, income and other payments and benefits required of lessees, subtenants, tenants, occupants, licensees, concessionaires, or other persons or parties (hereinafter collectively referred to as "Tenants"), whether or not designated as rent or additional rent (including, without limitation, security deposits, tax or operating expense escalation payments, percentage rent, or any other payments from any license, use permit, or concession), and any other income, issues and profits (collectively referred to as "Rents") arising from any rental units, space or rentable facilities within, on or appurtenant to the Property or any portion thereof; (iii) any and all guaranties ("Guaranties"), if any, of the obligor's performance under any of the Leases; and (iv) all of Borrower's contractual rights now existing or hereafter arising between Borrower and any Tenants with respect to the Property, regardless of the fact that such rights may not run with the land.

2.    COLLATERAL ASSIGNMENT: The assignment contained in this Agreement is absolute and is intended as a present assignment of all of Borrower's right, title and interest in and the Leases and Rents. However, between Borrower and Lender, Borrower shall have a revocable license (the "License") to manage and operate the Property and to collect at the same time but not prior to the date provided for the payment thereof, all Rents arising under the Leases or from the Property and to retain, use and enjoy the same.

1

3. REPRESENTATIONS AND WARRANTIES: As an inducement to the Lender to extend credit to the Borrower, Borrower hereby represents and warrants to Lender that:

(a) Borrower is the sole owner of the entire unencumbered landlord's interest in all of the presently existing Leases and neither Borrower nor any previous owner of the Property has executed any prior assignment or pledge of the Leases or Rents of the Property or any other contractual rights hereby assigned;

(b) No Lease or option to lease affecting the Property or any part of it presently exists except for those Leases listed and described in Exhibit B hereto;

(c) Each of the Leases is in full force and effect, and no material default or breach on the part of Borrower or any Tenant exists thereunder; nor has there been any occurrence or omission which, with the giving of notice or the passage of time or both, could give rise to a material default thereunder. There are no setoffs, defenses or claims in favor of any of the Tenants under any of the Leases against enforcement of any of the terms or conditions thereof;

(d) There have been no amendments, alterations or modifications of any of the Leases, nor has Borrower made any rental or other concessions to any Tenant thereunder in respect of the provisions thereof, except as may be expressly set forth in the Leases. There are no security deposits, except as expressly provided in the Leases. There have been no prepayments of Rents or other amounts in connection with any of the Leases other than as set forth in or specifically provided for by the pertinent Lease, nor has payment of the same been waived, released, discounted or otherwise discharged or compromised;

(e) The premises demised under the Leases have been completed and the Tenants have accepted the same and have taken possession of the same on a rent paying basis;

(f) The rent roll delivered to the Lender in connection with this Assignment (and any updated rent rolls delivered to the Lender at any time during which this Assignment is in effect) is or will be when delivered true, accurate, and complete in all material respects; and

(g) Borrower has the right, power and authority to make and enter into this Assignment and carry out the transactions contemplated herein.

2

4.     COVENANTS:     Borrower hereby covenants with Lender that Borrower shall:

(a)     punctually observe and perform all the obligations imposed upon the landlord under the Leases;

(b)     not do or permit to be done anything to impair the security of Borrower hereunder or its interest as landlord under the Leases;

(c)     not collect any of the Rents of the Property more than thirty (30) days in advance, other than such payments as are required to be paid in advance by the terms of any Lease which has been approved in writing by Lender;

(d)     not execute, without Lender's prior written consent any other assignment of the landlord's interest in the Leases;

(e)     not subordinate the Lease to any mortgage or other encumbrance or permit, consent or agree to any such subordination without Lender's prior written consent;

(f)     not alter, amend, modify or change the terms of any of the Guaranties, if any, or cancel or terminate any such Guarantee without Lender's prior written consent;

(g)     not release any Tenant from any liability under any of the Leases or otherwise, or consent to, suffer or permit or waive any act or omission on the part of any Tenant which would otherwise constitute a default under the Leases;

(h)     use all reasonable efforts to enforce all of the obligations of each Tenant, exercise, in a manner satisfactory to Lender, any rights and remedies available to Borrower as landlord under any of the Leases upon default or breach by any Tenant thereunder, and exercise any option available to Borrower under any of the Leases at the written request of Lender, provided, however, in no event shall Borrower terminate any Lease without Lender's prior written consent;

(i)     after an Event of Default, facilitate in all reasonable ways Lender's collection of all Rents and, upon request by Lender, execute a written notice to each Tenant directing the Tenant to pay rent to Lender;

(J)     notify Lender promptly in writing of any Lease affecting the property which is entered into by Borrower after the date hereof and, contemporaneously therewith, provide Lender with a copy thereof, certified by Borrower as true and accurate;

(k)     give Lender promptly a true copy of any notice given to Borrower by any Tenant if such notices is required or permitted to be given by the terms of any Lease; and

3

(I) deliver to Lender upon request, but no less often than annually, a certified rent roll for the Property, satisfactory in form and content to the Lender, and at Lender's request, execute and deliver such further instruments and take such further actions to accomplish the purpose of this Assignment as Lender may from time to time require.

5. REMEDIES OF LENDER: Upon the occurrence of an Event of Default (as defined in the Loan Documents), the license provided to Borrower in Paragraph 2 hereof shall automatically cease and terminate. Borrower hereby expressly and irrevocably authorizes Lender, its employees and agents, at Lender's option, upon or at any time after the occurrence of an Event of Default, without notice and without bringing any legal action or proceeding, to exercise any or all of the following remedies:

5.1 Possession of Property: To take physical possession of the Property and of all books, records, documents, and accounts relating thereto and, at its options, to take over and assume the management, operation and maintenance of the Property and, in connection therewith, to perform all acts and to expend such sums out of the Rents or any other income of the Property as Lender may deem advisable, in the same manner and to the same extent as Borrower might do, including, without limitation, the right to enter into new Leases, to cancel or surrender existing Leases, to alter or amend the terms of existing Leases, to renew existing Leases, to make concessions to or deal in any other way with Tenants, to hire a professional property manager for the Property, and to make all such alterations, renovations, repairs and replacements to the Property as Lender may deem proper in Lender's sole, unfettered discretion. If necessary to obtain possession as provided above, Lender may, without liability to Borrower or any other persons, invoke any and all legal remedies to dispossess Borrower, including, without limitation, one or more actions of forcible entry and detainer, trespass and restitution.

5.2 Collection of Rents and Other Amounts:  Either with or without taking possession of the Property, through a receiver or otherwise, in its own name or otherwise, (i) to collect the Rents accrued by unpaid and in arrears at the date of such Event of Default as well as the Rents thereafter accruing and becoming payable; and (ii) to collect the damages payable to any landlord pursuant to the provisions contained in any of the Leases, and to apply such Rents or damages to the Note, the Guaranty and other Obligations.

5.3 Enforcement of Assigned Rights: To enforce all or any of such contractual rights as may have been assigned hereby and, in connection therewith, to enter upon the Property and do such acts and things as Lender deems necessary or desirable in its sole, unfettered discretion to protect the Property or the Leases, and Borrower hereby irrevocably appoints Lender its attorney in fact, coupled with an interest, to do all acts pertaining thereto in its place and stead.

5.4 Other: To take such other actions or commence such other proceedings as Lender may deem necessary or advisable in its sole, unfettered discretion to protect its interest in the Property and its ability to collect the Obligations as are available under law or equity.

All sums advanced by Lender under this Paragraph 5 shall bear interest at the default rate of interest set forth in the Note, shall be payable by Borrower upon demand, and shall constitute a part of the Obligations secured hereby and by the Mortgage.

6.    GENERAL PROVISION REGARDING REMEDIES;

6.1 <u>Exercise of Remedies</u>:  All of the rights, remedies and options hereunder or otherwise available at law or in equity are cumulative and may be exercised without regard to the adequacy or exclusion of any other right, remedy, option or security held by Lender.

6.2 <u>No Waiver or Release</u>:  Lender may resort to any remedies and the security given by the Loan Documents in whole or in part, at such times and in such portions and in such order as may seem best to Lender in its sole, unfettered discretion, and any such action shall not in any way be considered as a waiver of any of the rights, benefits or remedies evidenced by the Loan Documents. The failure of Lender to exercise any right, remedy or option provided for in the Loan Documents shall not be deemed to be a waiver of any of the covenants or obligations secured by the Loan Documents. No sale of all or any of the Property, no forbearance on the part of Lender and no extension of the time for the payment of the whole or any part of the Indebtedness or any other indulgence given by Lender to Borrower or any other person or entity, shall operate to release or in any manner affect Lender's interest in the Property or the liability of Borrower to pay the Obligations.

6.3 <u>No Waiver of Default</u>:  The exercise by Lender of any of its rights or remedies hereunder shall not cure or waive any Event of Default hereunder or under any of the other Loan Documents, or waive, modify or affect any notice of default under the Note or any of the other Loan Documents, or invalidate any act done pursuant to such notice, and the enforcement of such right or remedy by Lender, once exercised, shall continue for so long as Lender shall elect.

6.4 <u>Exercise of Remedies Following Foreclosure Suit</u>:  The right of Lender to exercise any of its rights or remedies hereunder shall, to the extent not prohibited by law, also extend to the period from and after the filing of any suit to foreclose the lien created under any of the Loan Documents which cover the Property, including any period allowed by law for the redemption of the Property after any foreclosure sale.

7.    <u>APPLICATION OF PROCEEDS</u>:  Lender shall, after payment of all costs and expenses, including, without limitation, reasonable attorneys' fees and disbursements and reasonable compensation to itself or to such managing agent as it shall in its sole and absolute judgment select and employ, costs of alterations, renovations, repairs and replacements made or authorized by Lender, and all expenses incident to Lender taking possession of the Property, and after the accumulation of all proper reserves (including, without limitation, reserves for taxes, assessments, utilities, and fire and liability insurance), credit the net amount of income received by it from the Property by virtue of

5

this Assignment to any amounts due and owing by Borrower under the terms of any of the Loan Documents or any other Obligations. The manner and priority of the application of such net income and what items shall be credited shall be determined by Lender in its sole, unfettered discretion. Lender shall not be accountable for more monies than it actually receives from the Property; nor shall it be liable for failure to collect Rents or enforce other obligations.

Any amounts received by Borrower or its agents in connection with the performance of any actions prohibited by the terms hereof, including, without limitation, any amounts received in connection with any cancellation, modification or amendment of any of the Leases prohibited hereby and any Rents received by Borrower from and after the date of any Event of Default shall be held by Borrower as trustee for Lender and all such amounts shall be accounted for to Lender and shall not be commingled with other funds of Borrower. Any person acquiring or receiving all or any portion of such trust funds shall acquire or receive the same in trust for Lender as if such person had actual or constructive notice that such funds were impressed with a trust n accordance herewith.

8.     <u>LIMITATION ON LENDER'S LIABILITY</u>:  Lender shall not be liable for any loss sustained by Borrower resulting from Lender's failure to let the Property after default or from any other act or omission of Lender in managing the Property after default unless such loss is caused by the willful misconduct and bad faith of Lender. Lender shall not be obligated to pay any debt or meet any financial obligations to any person at any time in relation to the property or to perform or discharge any obligation, duty or liability under any of the Leases, and Borrower shall indemnify and hold Lender harmless from any liability or loss, or damage which it might incur under any of the Leases, by reason of this Assignment, or from any other claims or demands which may be asserted against Lender by reason of any alleged obligation or undertaking on its part to be performed or discharged under any of the Leases. If Lender incurs any such liability, loss or damage or in the defense of any such claims or demands, Borrower shall immediately, upon demand, reimburse Lender for the amount thereof, including costs, expenses and attorneys' fees. It is further understood that this Agreement shall not operate to place responsibility for the control, care, management or repair of the Property upon Lender, nor for the carrying out of any of the terms and conditions of said Leases; nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the Tenants or any other parties, nor for any dangerous or defective condition of the Property, nor for any negligence in the management, upkeep, repair or control of said Property resulting in loss or injury or death to any Tenant, licenses, employee or stranger, and Borrower hereby releases all claims against Lender arising out of or in connection with such management, operation and maintenance.

Entry by Lender upon the Property under the terms of this Assignment shall not constitute Lender a "mortgagee in possession" in contemplation of law, except at the option of Lender expressed in writing.

9.     <u>INDEMNIFICATION</u>: Borrower shall, and does hereby agree to, indemnify Lender for, and to hold Lender harmless from and against, any and all liability, loss or

damage which may or might be incurred under any of the Leases or under or by reason of this Assignment and from any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligations or undertaking on its part to perform or discharge any of the terms, covenants or agreements contained in any Leases or under or by reason of this Assignment or in defense of any such claims or demands, excluding, however, any liability, loss, damage, claim or demand arising out of Lender's bad faith or willful misconduct. The amount of any indemnified liability, loss, damage, claim or demand, including costs, expenses and reasonable attorneys' fees and disbursements, shall be secured hereby and Borrower shall reimburse Lender therefore immediately upon demand. Upon the failure of Borrower to do so, Lender may, at its option, declare all sums secured hereby immediately due and payable and shall cause any nonreimbursed amounts, together with interest at the rate set forth in the Note, to be added to the Indebtedness.

10.    RELEASE OF ASSIGNMENT: This Assignment shall remain in full force and effect as long as any Obligations of Borrower remain outstanding and only a discharge of the Mortgage appearing of record where the Mortgage is recorded shall operate as a release of Lender's rights and interest hereunder.

11.    DIRECTION TO TENANTS:  Borrower hereby consents to and irrevocably authorizes and directs the Tenants and any successors in interest to such Tenants, upon demand and notice in writing from Lender of Lender's right to receive the Rents, to pay to Lender the Rents due and to become due under the Leases. Tenants shall have the right to rely upon such demand and notice from Lender and shall pay such Rents to Lender without any obligation or right to determine the actual existence of an Event of Default or other event claimed by Lender as the basis for Lender's right to receive such Rents and notwithstanding any notice from or claims of Borrower to the contrary, and Borrower shall have no right to claim against said Tenants for any such Rents so paid by said Tenants to Lender.

12.    MISCELLANEOUS:

12.1 Lender's Right to Waive, Consent or Release:  Lender may at any time and from time to time, in writing: (a) waive compliance by Borrower with any covenant herein made by Borrower to the extent and in the manner specified in such writing; or (b) consent to Borrower doing any act which Borrower is prohibited hereunder from doing, or consent to Borrower's failing to do any act which Borrower is required hereunder to do, to the extent and in the manner specified in such writing, provided, however, all such consents and waivers may be granted or withheld in Lender's sole and absolute discretion. No such act shall in any way impair the rights hereunder of Lender, except to the extent specifically agreed to by Lender in such writing.

12.2 No Impairment:  The interests and rights of Lender hereunder and under the other Loan Documents shall not be impaired by any indulgence, including, without limitation; (a) any renewal, extension or modification which Lender may grant with respect to any of the Obligations; (b) any surrender, compromise, release, renewal,

extension, exchange or substitution which Lender may grant in respect of the Property or any interest therein; or (c) any release or indulgence granted to any maker, endorser, Borrower or surety of any of the Obligations.

12.3 <u>Amendments</u>: This Assignment may not be waived, changed or discharged orally, but only by an agreement in writing and signed by Lender, and any oral waiver, change or discharge of any provision hereof shall be without authority and of no force and effect. Such waiver, change or discharge shall be effective only in the specific instances and for the purposes for which given to the extent therein specified.

12.4 <u>Notices</u>: Any notice, request, demand or other communication required or permitted hereunder shall be given in writing by delivering the same in person to the intended addressee or by sending the same by overnight courier service with guaranteed next day delivery or by certified United States Mail, postage prepaid or telegram sent to the intended addressee at the applicable address set forth on Page 1 hereof or to such different address as either Borrower or Lender shall have designated by written notice to the other sent in accordance herewith. Such notices shall be deemed given when received or, if earlier, in the case of delivery by courier service with guaranteed next day delivery, the next day or the day designated for delivery, or in the case of delivery by certified United States Mail, two days after deposit therein. No Notice to or demand on Borrower in any case shall of itself entitle Borrower to any other or further notice or demand in similar or other circumstances.

12.5 <u>Successors and Assigns</u>: The terms, provisions, covenants and conditions hereof shall be binding upon Borrower, and any permitted successors and assigns, and shall constitute covenants running with the land.

12.6 <u>Severability</u>: A determination that any provision hereof is unenforceable or invalid shall not affect the enforceability or validity of any other provision, and any determination that the application of any provision hereof to any person or circumstances is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply or any other persons or circumstances.

12.7 <u>Joint and Several Liability</u>: If Borrower is composed of more than one party, the obligations, covenants, agreements, representations and warranties contained herein, as well as the obligations arising hereunder, are and shall be joint and several as to each such party.

12.8 <u>Governing Law</u>: This Assignment shall be governed by the laws of The Commonwealth of Massachusetts. Borrower hereby knowingly, voluntarily and intentionally waives the right it may have to a trial by jury in any litigation based hereon, or arising out of, under or in connection with this Assignment or any agreement contemplated to be executed in connection herewith in any course of conduct, course of duty, statement (whether written or oral) or action of either party.

12.9 <u>Borrower/Lender Relationship</u>: Nothing contained in this Assignment will be construed as creating a joint venture or partnership of or between Borrower and Lender or any other relationship between the parties other than as Borrower and Lender, and Borrower hereby indemnifies and agrees to hold harmless Lender from any and all damages resulting from such a construction of the relationship of the parties hereto.

12.10 <u>Captions</u>: All paragraph and subparagraph captions are for convenience of reference only and shall not affect the construction of any provision herein.

12.11 <u>Conflicts</u>: This Assignment is intended to be supplementary to and not in substitution for or in derogation of any assignment of rents to secure the Obligations contained in the Mortgage or in any of the other Loan Documents. In case of any conflict between the terms of this Assignment and the terms of any of the other Loan Documents, the terms of this Assignment shall prevail.

IN WITNESS WHEREOF, the undersigned has caused this Assignment to be signed as an instrument under seal as of this $1 \dfrac{4}{}$ day of February, 2020.

BORROWER:
SOUTHERN END REALTY, LLC

By: _____
KEITH M. GORMAN – MANAGER

By: _____
BRYAN P. GORMAN - MANAGER

Commonwealth of Massachusetts
County of Middlesex

On this $1 \dfrac{4}{}$ day of February, 2016, before me, the undersigned notary public, personally appeared KEITH M. GORMAN and BRYAN P. GORMAN, MANAGERS and proved to me through satisfactory evidence of identification, which was valid Massachusetts driver's license to be the persons whose names are signed on the preceding or attached document, and acknowledged to me that they each signed it voluntarily for its stated purpose on behalf of SOUTHERN END REALTY, LLC.

_____ - Notary Public

My Commission expires:

9

**EXHIBIT "A"**
(Description of Property)

## Exhibit A

**FIRST UNIT:**  A certain condominium unit located in Lowell, Middlesex County, Massachusetts known as **44 Highland Street, Unit 1** (the "Unit") in Southern Estates Condominium (the Condominium"), a condominium established pursuant to Massachusetts General Laws, Chapter 183A, by Master Deed dated November 25, 2019 and recorded with the Middlesex North Registry of Deeds at Book 33609, Page 194; and thereafter amended by the First Amendment to Master Deed of the Southern Estates Condominium, dated January 13, 2020 and recorded with Middlesex North District Registry of Deeds in Book 33743, Page 285 (hereinafter the "Master Deed").

The Unit contains **2,926** square feet, more or less, and is laid out as shown on the floor plans of the Condominium recorded with the Master Deed, as subsequently amended, at Plan Book 247, Plan 31, to which is affixed a verified statement in the form required by Section 8 of said Chapter 183A (hereinafter the "Master Deed Site Plan").

The Unit has a mailing address of:   **44 Highland Street, Unit 1, Lowell, Massachusetts 01852.**

The Unit is conveyed together with:

1. An undivided **16.25** percentage interest in the common areas and facilities of the Condominium as set forth in Exhibit B of the Master Deed, and as may be amended pursuant to the terms of the Master Deed.

2. The exclusive right to use the Exclusive Use Area(s) set forth and designated on the Master Deed Site Plan, and subject to the terms and conditions of the Master Deed recorded at said Registry of Deeds in Plan Book 247, Plan 31.

3. All other rights, easements, agreements, interests and provisions contained in the Declaration of Trust and By-law of the Southern Estates Condominium dated November 25, 2019 and recorded with said Registry of Deeds at Book 33609, Page 214 (the "Declaration of Trust"), and the By-Laws (the "By-Laws') and Rules and Regulations (the "Rules and Regulations") adopted pursuant thereto, as any of the same may be amended from time to time pursuant to the provisions thereof;

4. Any and all easements, reservations, covenants and restrictions of record.

The Unit is conveyed subject to and with the benefit of:

1. The provisions of said Chapter 183A as the same may be amended from  time to time;

2.  The provisions of the Master Deed, the provisions of the Declaration of Trust, the By-Laws and the Rules and Regulations, and the matters noted and depicted on the Master Deed Site Plan and floor plans of the condominium, in each case as the same may be amended from time to time pursuant to the terms thereof:

3.  Real estate taxes assessed against the Unit and the Common Areas and Facilities which are not yet due and payable;

4.  Any and all easements, reservations, covenants, restrictions and other matters of record insofar as are now in full force and applicable including, without limitation:

    a.  Easements and restrictions of record and all easements of record contained on a plan entitled "'Condominium Site & Unit Plans; Southern Estates, Lowell, Massachusetts' prepared by Land plex Civil Engineering and Surveying; Dated: October 31, 2019; Scale: 1'= As Noted", and recorded at said Registry of Deeds in Plan Book 247, Plan 31.

5.  The provisions of existing building and zoning laws; and

6.  Any and all rights, restrictions, easement, and agreements of record, in any, insofar as are now in force and applicable. The above unit are also subject to a Special Permit and Site Plan Approval issued by the City of Lowell, Massachusetts; easements for utility and telephone services granted to any public utility or telephone company by the Declarant, whether granted heretofore or hereafter, to the extent that the same are now in force and applicable. The Trustee(s) of the Condominium Trust shall have right to grant permits, licenses and easements over the common areas and facilities for utilities and other purposes reasonably necessary of useful for the proper maintenance or operation of the condominium project.

The Unit shall be used only for residential dwelling purposes, as more set forth in Section 9 of the Master Deed.

The rights, agreements, easements, restrictions, provisions and interests set forth herein, together with any amendments, thereto shall constitute covenants running with the land and shall enure to the benefit of said land.

Meaning and intending to convey a portion of the same premises as conveyed to SOUTHERN END, LLC by deed of Rosemary E. Noon, et al, recorded on Mary 18, 2018 and recorded with the Middlesex North District Registry of Deeds in Book 32083, Page 14.

**SECOND UNIT:**  A certain condominium unit located in Lowell, Middlesex County, Massachusetts known as **42 Highland Street, Unit 1** (the "Unit") in Southern Estates Condominium (the Condominium"), a condominium established pursuant to Massachusetts General Laws, Chapter 183A, by Master Deed dated November 25, 2019 and recorded with the Middlesex North Registry of Deeds at Book 33609, Page 194; and thereafter amended by the First Amendment to Master Deed of the Southern Estates Condominium, dated January 13, 2020 and recorded with Middlesex North District Registry of Deeds in Book 33743, Page 285 (hereinafter the "Master Deed").

The Unit contains **3,294** square feet, more or less, and is laid out as shown on the floor plans of the Condominium recorded with the Master Deed, as subsequently amended, at Plan Book 247, Plan 31, to which is affixed a verified statement in the form required by Section 8 of said Chapter 183A (hereinafter the "Master Deed Site Plan").

The Unit has a mailing address of:  **42 Highland Street, Unit 1, Lowell, Massachusetts 01852.**

The Unit is conveyed together with:

1. An undivided **17.5** percentage interest in the common areas and facilities of the Condominium as set forth in Exhibit B of the Master Deed, and as may be amended pursuant to the terms of the Master Deed.

2. The exclusive right to use the Exclusive Use Area(s) set forth and designated on the Master Deed Site Plan, and subject to the terms and conditions of the Master Deed recorded at said Registry of Deeds in Plan Book 247, Plan 31.

3. All other rights, easements, agreements, interests and provisions contained in the Declaration of Trust and By-law of the Southern Estates Condominium dated November 25, 2019 and recorded with said Registry of Deeds at Book 33609, Page 214 (the "Declaration of Trust"), and the By-Laws (the "By-Laws') and Rules and Regulations (the "Rules and Regulations") adopted pursuant thereto, as any of the same may be amended from time to time pursuant to the provisions thereof;

4. Any and all easements, reservations, covenants and restrictions of record.

The Unit is conveyed subject to and with the benefit of:

1. The provisions of said Chapter 183A as the same may be amended from time to time;

2. The provisions of the Master Deed, the provisions of the Declaration of Trust, the By-Laws and the Rules and Regulations, and the matters noted and depicted on the Master Deed Site Plan and floor plans of the condominium,

in each case as the same may be amended from time to time pursuant to the terms thereof:

3. Real estate taxes assessed against the Unit and the Common Areas and Facilities which are not yet due and payable;

4. Any and all easements, reservations, covenants, restrictions and other matters of record insofar as are now in full force and applicable including, without limitation:

    b. Easements and restrictions of record and all easements of record contained on a plan entitled "'Condominium Site & Unit Plans; Southern Estates, Lowell, Massachusetts' prepared by Land plex Civil Engineering and Surveying; Dated: October 31, 2019; Scale: 1'= As Noted", and recorded at said Registry of Deeds in Plan Book 247, Plan 31.

5. The provisions of existing building and zoning laws; and

6. Any and all rights, restrictions, easement, and agreements of record, in any, insofar as are now in force and applicable. The above unit are also subject to a Special Permit and Site Plan Approval issued by the City of Lowell, Massachusetts; easements for utility and telephone services granted to any public utility or telephone company by the Declarant, whether granted heretofore or hereafter, to the extent that the same are now in force and applicable. The Trustee(s) of the Condominium Trust shall have right to grant permits, licenses and easements over the common areas and facilities for utilities and other purposes reasonably necessary of useful for the proper maintenance or operation of the condominium project.

The Unit shall be used only for residential dwelling purposes, as more set forth in Section 9 of the Master Deed.

The rights, agreements, easements, restrictions, provisions and interests set forth herein, together with any amendments, thereto shall constitute covenants running with the land and shall enure to the benefit of said land.

Meaning and intending to convey a portion of the same premises as conveyed to SOUTHERN END, LLC by deed of Rosemary E. Noon, et al, recorded on Mary 18, 2018 and recorded with the Middlesex North District Registry of Deeds in Book 32083, Page 14.

**THIRD UNIT:** A certain condominium unit located in Lowell, Middlesex County, Massachusetts known as **44 Highland Street, Unit 2** (the "Unit") in Southern Estates Condominium (the Condominium"), a condominium established pursuant to Massachusetts General Laws, Chapter 183A, by Master Deed dated November 25, 2019

and recorded with the Middlesex North Registry of Deeds at Book 33609, Page 194; and thereafter amended by the First Amendment to Master Deed of the Southern Estates Condominium, dated January 13, 2020 and recorded with Middlesex North District Registry of Deeds in Book 33743, Page 285 (hereinafter the "Master Deed").

The Unit contains **2,926** square feet, more or less, and is laid out as shown on the floor plans of the Condominium recorded with the Master Deed, as subsequently amended, at Plan Book 247, Plan 31, to which is affixed a verified statement in the form required by Section 8 of said Chapter 183A (hereinafter the "Master Deed Site Plan").

The Unit has a mailing address of:  **44 Highland Street, Unit 2, Lowell, Massachusetts 01852**.

The Unit is conveyed together with:

1. An undivided **16.25%** percentage interest in the common areas and facilities of the Condominium as set forth in Exhibit B of the Master Deed, and as may be amended pursuant to the terms of the Master Deed.

2. The exclusive right to use the Exclusive Use Area(s) set forth and designated on the Master Deed Site Plan, and subject to the terms and conditions of the Master Deed recorded at said Registry of Deeds in Plan Book 247, Plan 31.

3. All other rights, easements, agreements, interests and provisions contained in the Declaration of Trust and By-law of the Southern Estates Condominium dated November 25, 2019 and recorded with said Registry of Deeds at Book 33609, Page 214 (the "Declaration of Trust"), and the By-Laws (the "By-Laws') and Rules and Regulations (the "Rules and Regulations") adopted pursuant thereto, as any of the same may be amended from time to time pursuant to the provisions thereof;

4. Any and all easements, reservations, covenants and restrictions of record.

The Unit is conveyed subject to and with the benefit of:

1. The provisions of said Chapter 183A as the same may be amended from  time to time;

2. The provisions of the Master Deed, the provisions of the Declaration of Trust, the By-Laws and the Rules and Regulations, and the matters noted and depicted on the Master Deed Site Plan and floor plans of the condominium, in each case as the same may be amended from time to time pursuant to the terms thereof;

3. Real estate taxes assessed against the Unit and the Common Areas  and

Facilities which are not yet due and payable;

4. Any and all easements, reservations, covenants, restrictions and other matters of record insofar as are now in full force and applicable including, without limitation:

   c. Easements and restrictions of record and all easements of record contained on a plan entitled "'Condominium Site & Unit Plans; Southern Estates, Lowell, Massachusetts' prepared by Land plex Civil Engineering and Surveying; Dated: October 31, 2019; Scale: 1'= As Noted", and recorded at said Registry of Deeds in Plan Book 247, Plan 31.

5. The provisions of existing building and zoning laws; and

6. Any and all rights, restrictions, easement, and agreements of record, in any, insofar as are now in force and applicable. The above unit are also subject to a Special Permit and Site Plan Approval issued by the City of Lowell, Massachusetts; easements for utility and telephone services granted to any public utility or telephone company by the Declarant, whether granted heretofore or hereafter, to the extent that the same are now in force and applicable. The Trustee(s) of the Condominium Trust shall have right to grant permits, licenses and easements over the common areas and facilities for utilities and other purposes reasonably necessary of useful for the proper maintenance or operation of the condominium project.

The Unit shall be used only for residential dwelling purposes, as more set forth in Section 9 of the Master Deed.

The rights, agreements, easements, restrictions, provisions and interests set forth herein, together with any amendments, thereto shall constitute covenants running with the land and shall enure to the benefit of said land.

Meaning and intending to convey a portion of the same premises as conveyed to SOUTHERN END, LLC by deed of Rosemary E. Noon, et al, recorded on Mary 18, 2018 and recorded with the Middlesex North District Registry of Deeds in Book 32083, Page 14.

# **EXHIBIT E**

# Middlesex North Registry of Deeds

# Electronically Recorded Document

## This is the first page of this document - Do not remove

---

### Recording Information

| | |
|---|---|
| Document Number | : 2478 |
| Document Type | : DEED |
| Recorded Date | : January 17, 2020 |
| Recorded Time | : 02:10:57 PM |
| | |
| Recorded Book and Page | : 33759 / 200 |
| Number of Pages(including cover sheet) | : 5 |
| Receipt Number | : 869743 |
| Recording Fee (including excise) | : $1,796.60 |

*************************************************

MASSACHUSETTS EXCISE TAX
Middlesex North ROD #14 001
Date: 01/17/2020 02:10 PM
Ctrl# 086428 14090 Doc#  00002478
Fee: $1,641.60 cons: $360,000.00
*************************************************

**Middlesex North Registry of Deeds**
**Richard P. Howe Jr., Register**
**360 Gorham Street**
**Lowell, Massachusetts 01852**
**978/322-9000**
**www.lowelldeeds.com**

## CONDOMINIUM UNIT DEED

**SOUTHERN END REALTY, LLC,** a Massachusetts limited liability company having a principal place of business at 1105 Lakeview Avenue, Dracut, Middlesex County, Massachusetts for consideration paid and in full consideration of **Three Hundred Sixty Thousand and 00/100 ($360,000.00) Dollars,** hereby grants to **Sergio Musto, unmarried, and Allison Hodges, unmarried, as joint tenants with rights of survivorship both of 42 Highland Street, Unit 1, Lowell, Middlesex County, Massachusetts, 01852**

with QUITCLAIM COVENANTS

A certain condominium unit located in Lowell, Middlesex County, Massachusetts known as **42 Highland Street, Unit 1** (the "Unit") in Southern Estates Condominium (the Condominium"), a condominium established pursuant to Massachusetts General Laws, Chapter 183A, by Master Deed dated November 25, 2019 and recorded with the Middlesex North Registry of Deeds at Book 33609, Page 194; and thereafter amended by the First Amendment to Master Deed of the Southern Estates Condominium, dated January 13, 2020 and recorded with Middlesex North District Registry of Deeds in Book 33743, Page 285 (hereinafter the "Master Deed").

The Unit contains **3,294** square feet, more or less, and is laid out as shown on the floor plans of the Condominium recorded with the Master Deed, as subsequently amended, at Plan Book 247, Plan 31, to which is affixed a verified statement in the form required by Section 8 of said Chapter 183A (hereinafter the "Master Deed Site Plan").

The Unit has a mailing address of:  **42 Highland Street, Unit 1, Lowell, Massachusetts 01852**.

The Unit is conveyed together with:

1. An undivided **17.5%** percentage interest in the common areas and facilities of the Condominium as set forth in Exhibit B of the Master Deed, and as  may be amended pursuant to the terms of the Master Deed.

2. The exclusive right to use the Exclusive Use Area(s) set forth and designated on the Master Deed Site Plan, and subject to the terms and conditions of the Master Deed recorded at said Registry of Deeds in Plan Book 247, Plan 31.

Property Address:    42 Highland Street, Unit 1, Lowell, MA 01852

3. All other rights, easements, agreements, interests and provisions contained in the Declaration of Trust and By-law of the Southern Estates Condominium dated November 25, 2019 and recorded with said Registry of Deeds at Book 33609, Page 214 (the "Declaration of Trust"), and the By-Laws (the "By-Laws') and Rules and Regulations (the "Rules and Regulations") adopted pursuant thereto, as any of the same may be amended from time to time pursuant to the provisions thereof;

4. Any and all easements, reservations, covenants and restrictions of record.

The Unit is conveyed subject to and with the benefit of:

1. The provisions of said Chapter 183A as the same may be amended from time to time;

2. The provisions of the Master Deed, the provisions of the Declaration of Trust, the By-Laws and the Rules and Regulations, and the matters noted and depicted on the Master Deed Site Plan and floor plans of the condominium, in each case as the same may be amended from time to time pursuant to the terms thereof:

3. Real estate taxes assessed against the Unit and the Common Areas and Facilities which are not yet due and payable;

4. Any and all easements, reservations, covenants, restrictions and other matters of record insofar as are now in full force and applicable including, without limitation:

   a. Easements and restrictions of record and all easements of record contained on a plan entitled "'Condominium Site & Unit Plans; Southern Estates, Lowell, Massachusetts' prepared by Land plex Civil Engineering and Surveying; Dated: October 31, 2019; Scale: 1'= As Noted", and recorded at said Registry of Deeds in Plan Book 247, Plan 31.

5. The provisions of existing building and zoning laws; and

6. Any and all rights, restrictions, easement, and agreements of record, in any, insofar as are now in force and applicable. The above unit are also subject to a Special Permit and Site Plan Approval issued by the City of Lowell, Massachusetts; easements for utility and telephone services granted to any public utility or telephone company by the Declarant, whether granted heretofore or hereafter, to the extent that the same are now in force and applicable. The Trustee(s) of the Condominium Trust shall have right to grant permits, licenses and easements over the common areas and facilities for utilities and other purposes reasonably necessary of useful for the proper maintenance or operation of the condominium project.

The Unit shall be used only for residential dwelling purposes, as more set forth in Section 9 of the Master Deed.

The rights, agreements, easements, restrictions, provisions and interests set forth herein, together with any amendments, thereto shall constitute covenants running with the land and shall enure to the benefit of said land.

Meaning and intending to convey a portion of the same premises as conveyed to SOUTHERN END, LLC by deed of Rosemary E. Noon, et al, recorded on Mary 18, 2018 and recorded with the Middlesex North District Registry of Deeds in Book 32083, Page 14.

This is not homestead property of the Grantor.

This conveyance does not represent a transfer of all or substantially all of the grantor's assets located within the Commonwealth of Massachusetts.

WITNESS the hand and seal of the duly authorized Manager of SOUTHERN END REALTY, LLC this _17th_ day of January, 2020.

SOUTHERN END REALTY, LLC

By: Keith M. Gorman
Manager

BY: Bryan P. Gorman
Manager

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

On this __17th__ day of January, 2020, before me, the undersigned notary public, personally appeared Keith M. Gorman and Bryan P. Gorman, Managers of SOUTHERN END REALTY, LLC, proved to me through satisfactory evidence of identification, which were valid driver's licenses, to be the persons whose names are signed on the preceding or attached documents and acknowledged to me that they each signed it voluntarily for its stated purposes as their free act and deed on behalf of SOUTHERN END REALTY, LLC.

NOTARY PUBLIC
My Commission expires:

The terms and conditions of the Master Deed of Southern Estates Condominium and the Declaration of Trust and By-Laws of the Southern Estates Condominium Trust are hereby acknowledged and accepted.

**Sergio Musto**

**Allison Hodges**

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

On this __17th__ day of January, 2020, before me, the undersigned notary public, personally appeared **Sergio Musto and Allison Hodges,** proved to me through satisfactory evidence of identification, which were valid ___MA___ drivers licenses, to be the persons whose names are signed on the preceding or attached documents and acknowledged to me they signed it voluntarily for its stated purposes as their free act and deed.

NOTARY PUBLIC
My Commission expires:

# EXHIBIT F

**Fill in this information to identify the case:**

Debtor 1    Keith Gorman

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  District of New Hampshire

Case number   22-10563-BAH

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Benson Lumber and Hardware, Inc.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Sheehan Phinney Bass & Green, PA
c/o Christopher M. Candon
Name

1000 Elm Street, 17th Floor
Number     Street

Manchester          NH          03101
City                State       ZIP Code

Contact phone   603.627.8168

Contact email   ccandon@sheehan.com

**Where should payments to the creditor be sent?** (if different)

Benson Lumber and Hardware, Inc.
c/o Brad Benson
Name

6 Martin Street
Number     Street

Derry          NH          03038
City           State       ZIP Code

Contact phone _____

Contact email   bbenson@bensonslumber.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
          MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

Official Form 410          **Proof of Claim**          page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____ |

7. **How much is the claim?**

$ _Undetermined; see attached addendum._____ . **Does this amount include interest or other charges?**

    ☐ No

    ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_Goods Sold, Personal Guaranty of all Liabilities of Southern End Realty, LLC.___

9. **Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

    **Nature of property:**

    ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

    ☐ Motor vehicle

    ☐ Other. Describe: _____

    **Basis for perfection:** _____

    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

    **Value of property:**     $_____

    **Amount of the claim that is secured:**     $_____

    **Amount of the claim that is unsecured:**   $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

    **Amount necessary to cure any default as of the date of the petition:**     $_____

    **Annual Interest Rate** (when case was filed)_____%

    ☐ Fixed

    ☐ Variable

10. **Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**     $_____

11. **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    01/24/2023
             MM / DD / YYYY

/s/ Christopher M. Candon
Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Christopher | M. | Candon |
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Sheehan Phinney Bass & Green, PA | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1000 Elm Street, 17th Floor | | |
| | Number      Street | | |
| | Manchester | NH | 03101 |
| | City | State | ZIP Code |
| Contact phone | 603.627.8168 | Email | ccandon@sheehan.com |

## ADDENDUM TO PROOF OF CLAIM OF
## BENSON LUMBER AND HARDWARE, INC.

<u>Claim Amount</u>:       Not less than $ 406,419.93 <u>plus</u> any accruing interest and all costs of collection, including attorneys' fees.

Southern End Realty, LLC ("<u>SER</u>") is a residential and commercial real estate development company operated, at least in part, by the Keith Gorman (the "<u>Debtor</u>"). On or about January 17, 2011, SER executed an Application for Business Credit and Non-Consumer Credit Agreement with Benson ("<u>SER Credit Agreement</u>"). That SER Credit Agreement established a commercial line of credit account between SER and Benson Lumber and Hardware, Inc. ("<u>Benson</u>"). The Debtor personally and unconditionally guaranteed the SER Credit Agreement. A true and correct copy of the SER Credit Agreement is attached hereto as **Exhibit A**.

The SER Credit Agreement provides that Benson will charge a late fee of 1.5% per month until paid in full. The SER Credit Agreement also provides that SER and the guarantors of the SER Credit Agreement are liable for all costs of collection, including attorneys' fees, if legal action is taken to enforce the SER Credit Agreement.

Pursuant to the SER Credit Agreement, SER purchased and received goods from Benson. As of the date of the Debtor's petition, SER purchased and received goods from Benson in the amount of $261,103.34 but has failed to pay for those goods. The interest that has accrued amounts to $ 145,316.59, for a total outstanding amount under the SER Credit Agreement of $ 406,419.93.

As a result of SER's defaults under the SER Credit Agreement, Benson agreed to forbear on immediately enforcing the SER Credit Agreement and, in exchange, SER agreed to provide Benson with a promissory note, personal guaranties, and security instruments pertaining to $150,000 worth of the outstanding debt. On or about February 14, 2020, SER executed a promissory note to Benson as holder of the Note, in the amount of $150,000 ("<u>Promissory Note</u>"). A true and correct copy of the Promissory Note is attached hereto as **Exhibit B**.

The Promissory Note required payment in full to be made by May 14, 2020, with interest accruing upon a default. The Promissory Note also provided for imposition of a 10% late fee for any required payment not received within ten days of being due. SER agreed to pay any attorneys' fees and costs incurred by Benson in collecting under the Promissory Note following a default.

The parties understood and agreed that any payments made under the Promissory Note would be credited toward what was then owed under the SER Credit Agreement.

The Debtor signed a personal guaranty dated February 14, 2020, in which he personally and unconditionally guaranteed any and all debts and obligations owed by SER to Benson as of that date and going forward (the "2020 Guaranty").  A true and correct copy of the 2020 Guaranty is attached hereto as **Exhibit C**.  Under the 2020 Guaranty, the Debtor waived any right to require Benson to proceed against SER or any collateral securing the Promissory Note prior to seeking enforcement of the 2020 Guaranty.

Benson Lumber reserves the right to amend this Proof of Claim to the full extent permitted by applicable law.

Copies of any additional pertinent documents that support this Proof of Claim are available upon request.

{S2290851.1}

# <u>EXHIBIT A</u>

# 213701



**OFFICE USE ONLY**
Account Name: _Southern End_
Account Number: _213701_

### APPLICATION FOR BUSINESS CREDIT
### and
### NON-CONSUMER CREDIT AGREEMENT
### with

BENSON'S LUMBER AND HARWARE, INC
P.O. Box 444
Derry, New Hampshire 03038-0444
(603) 432-2531
800-479-5439
www.bensonslumber.com

BENSON'S LUMBER AND HARWARE, INC
P.O. Box 1110
Londonderry, New Hampshire 03053-1110
(603) 432-9863
800-479-5439
www.bensonslumber.com

(Hereinafter individually and collectively referred to as "Benson's")

The undersigned hereby applies to Benson's for the establishment of a business credit account on the terms and conditions provided for herein, and represents and warrants the following credit information to be true, accurate and complete.

## Section 1: Individuals and Sole Proprietorships

Your Name: _BRYAN GORMAN / KEITH GORMAN_
Business Name: _SOUTHERN END REALTY LLC_
Business Address: _1105 LAKEVIEW AVE DRACUT MA 01826_
Phone Number: _978 957-6666_  Fax Number: _978 957-7944_
Social Security Number: _BRYAN_ ████████  _Keith_

## Section 2: General Information

List all trade names used by your business: _SOUTHERN END REALTY LLC_

**The principal checking account of the business is:**
Bank: ████████████
Office Location: ████████████████
Contact Person: _____  Contact Phone: _____

**The principal lender to the business is:**
Lender: ████████████ LLC
Address: ████████████████
Total Loans: $ ████████  Contact Person: ████████

Please provide the information requested for three (3) major business references:

Business Name: _____

Contact (name and title): _____

Address: _____

Phone: _____ Fax: _____

Business Name: _____

Contact (name and title): _____

Address: _____

Phone: _____ Fax: _____

Business Name: _____

Contact (name and title): _____

Address: _____

Phone: _____ Fax: _____

## Section 3: Terms and Agreement

The information provided in this application to Benson's is for the purpose of obtaining business credit, and the undersigned certifies that this information is complete and accurate as of this date. The undersigned agrees to promptly notify Benson's of any changes in the information provided.

The undersigned agrees that the payment terms are as follows:

Payments on account are due fully net 10th prox., and as may otherwise be established from time to time by Benson's. Delinquent accounts are subject to continuing late charges at the prevailing rate sent by Benson's which, until changed in writing by Benson's is one and one-half percent (1½%) per month each month until paid in full. Any customer checks, which do not clear the bank, are subject to a $25.00 service charge plus bank service charges plus repayment of any cash or prepayment discounts given. The undersigned agrees to pay all costs of collection, including attorney's fees, should legal action be required to enforce this agreement.

Date: 1-17-11 _____ Applicant: X _____

BRYAN GORMAN
PRINTED NAME

SIGNATURE

_____
WITNESS

X KEITH GORMAN

---

OFFICE USE ONLY

Approved Line of Credit: _10K_

Terms Code: _1% 10th    #H_

Salesperson: _Greg    #21_

Comments/Conditions: _____

Approved By: _DNB_

Selling Price: _#2_

Account Code: _224^_

Date of Approval: _3/22/11_

## Benson's Lumber and Hardware Stores
P.O. Box 444 • Martin Street • Derry, NH 03038 • (603) 432-2531
Orchard View Drive • Londonderry, NH 03053 • (603) 432-9863

To Whom This May Concern:

I,  _BRYAN  P.  GORVMAN_  DBA  _Southern  END  ROALTY  LLC_
      Applicant Name                                       Business Name

Authorize Benson's Lumber and Hardware, Inc. access to any and all credit information that pertains to my account with

_T.D. BANK_.
      Bank Name

Date:  _1-11-11_

Signed:

Witnessed:



Account Name: SOUTHERN END REALTY LLC

Account # _____

### CHARGE AUTHORIZATION NAMES ON ACCOUNT

I authorize the following people to charge to my house account at Benson's Lumber and Hardware, Derry and Londonderry. In providing this list of authorized users, I agree to be responsible for all charges to my account. If no list is provided only the person who completed the credit application will be allowed to charge this account.

BRYAN P. GORMAN

KEITH M. GORMAN

Name of person providing list  BRYAN GORMAN , Date  1-11-11

Account updated by _____ , Date _____

_____ , Date _____

_____ , Date _____

Fax (603) 432-2018



**Benson**
**Lumber & Hardware**
— Since 1913 —

Customer Name: ___Southern End Realty LLC___

Fax Number: ___978-957-7944___

E-Mail Address: _____     Contact: ___Bryan Gorman___

Please check off how you would like to receive your Invoices & Statements.

[ ] –Please send a copy of all invoices & credits via E-mail.

[ ] –Please send a copy of all invoices & credits via fax.

[ ] –Please send my monthly statement via E-mail.
    *Note: If we send via e-mail the invoices are not attached, you will just receive
    your statement.

[✗] –Please send my monthly statement via Fax.
    *Note: invoices will follow your statement if we send via fax.

Customer Signature: _____     Date: _____

## Section 4: Personal Guarantees

This section must be completed by the principals of all corporate applicants:

Whereas the Applicant is a corporation, and as an inducement for Benson's to extend the greatest line of credit possible, the following officers and/or partners and/or owners of Applicant hereby agree to personally and unconditionally guarantee this account. It is understood that this Guaranty shall be a continuing and irrevocable guaranty and indemnity for any indebtedness incurred by the Applicant. The undersigned hereby waive notice of default, demand for payment and all other notices and demands with respect hereof and consent to any modifications, extension or renewal of the credit and credit agreement hereby guaranteed.

SIGNED this ___2 - 11 - 11___ day of _____, 20 __11__

WITNESS: _____ 2/10/11

GUARANTORS:
_____
Individually

_____
Individually

_____
Individually

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

OFFICE USE ONLY

Approved Line of Credit: $ 15,000.00          Selling Price: _____

Terms Code: _____          Account Code: _____

Salesperson: _____

Comments/Conditions: _____

Approved By: _____          Date of Approval: _____

3

# <u>EXHIBIT B</u>

# PROMISSORY NOTE

$150,000.00                                    Dracut, Massachusetts
                                                February 14, 2020

FOR VALUE RECEIVED, the undersigned **SOUTHERN END REALTY, LLC**, a
Massachusetts limited liability company of 1105 Lakeview Avenue, Dracut
Massachusetts ("Maker"), promise to pay to the order of **BENSON LUMBER AND
HARDWARE, INC.,** a New Hampshire business corporation of 6 Martin Street, Derry,
New Hampshire 03038 ("Holder"), at 6 Martin Street, P.O. Box 444, Derry, New
Hampshire, 03038 or such other place as the Holder shall designate in writing, the
principal sum of **One Hundred Fifty Thousand and 00/100 ($150,000.00) Dollars**, due
and payable on May 14, 2020, together with interest thereon at the rate of Zero (0%)
percent per annum.  Interest shall be calculated on the basis of a 360-day year for actual
days elapsed.

All principal and, if any, accrued unpaid interest shall, in all events, be due and payable
on May 14, 2020. Payments shall be applied first to costs of collection, then to accrued
interest, and then to principal reduction. The Maker shall have the right to prepay this
Note without penalty at any time.

The Holder shall issue a partial release for each condominium unit secured by this
Promissory Note, upon payment from Maker, with accrued interest for each such
condominium unit, in the following amount:

44 Highland Street, Unit 1, Lowell, Massachusetts          $30,000.00
44 Highland Street, Unit 2, Lowell, Massachusetts          $30,000.00
42 Highland Street, Unit 1, Lowell, Massachusetts          $90,000.00

In addition to any other payments of principal and interest due under this Note, the Maker
shall pay to the holder a late charge of ten (10%) of any required payment not received by
the holder within ten (10) days after the payment is due.  If any payment is not received
by the holder hereof within ten (10) days from the due date, then interest will accrue at
the default rate of twenty-five (25%) percent per annum (based on a 360 day year),
retroactive to the due date, until paid in full. The foregoing default interest rate shall
automatically begin to accrue, without Notice to the Maker, on the entire outstanding
principal balance of this note as of the date of the default and any subsequent invoice sent
by the holder to the Maker calculating interest at the contract rate of interest shall not
constitute a waiver by the holder of its right to collect interest at the default rate,
notwithstanding the interest calculation set forth in such invoice.

The Maker agrees to pay all costs and expenses incurred by the holder hereof, including, all reasonable attorney's fees, in connection with the collection of this Note upon default, and to pay on all amounts not paid when due (pursuant to the terms hereof by acceleration, or otherwise).

At the option of the holder, this Note shall become immediately due and payable without notice or demand upon the occurrence at any time of any of the following events: (1) Default in any payment of principal or interest which is not cured within ten (10) days; (2) Default, beyond the applicable grace or cure period, in the performance or observance of the terms and conditions of the Mortgage and Security Agreement, and other instruments and documents of even date (including amendments and extensions thereof) securing this Note; (3) Default beyond any applicable grace or cure period in the payment and performance of any other liability or obligation of the Maker or of any endorser or guarantor of any liability or obligation of the Maker to the older; and (4) Service, pursuant to trustee process, upon the holder hereof of a writ in which the Holder is named as trustee of the Maker; (5) If the Maker or any endorser or guarantor hereof is a corporation, trust, or partnership, the liquidation, termination, or dissolution of any such organization; (6) If any party liable hereon, whether as maker, endorser, guarantor, surety or otherwise shall die, make an assignment for the benefit of creditors, or if a receiver of any such party's property shall be appointed, or if a petition in bankruptcy or other similar proceeding under any law for relief of debtors shall be filed by or against (if not dismissed or stayed within sixty (60) days in the event of an involuntary bankruptcy) any such party; (7) If there is a conveyance, including secondary financing, of all or any portion of, the mortgaged premises described in any mortgage securing the Note or any interest therein without prior approval of the holder; (8) Default under any other indebtedness which is secured by a mortgage on all or any portion of the premises described in the mortgage; or (9) If any proceeding shall be instituted challenging the validity or priority of the mortgage securing this Note.

Each and every party liable hereon, either as maker, endorser, guarantor, surety, or otherwise, hereby (1) waives presentment, demand, protest, and notices (except specifically otherwise required) of every kind and description, and all suretyship defenses and defenses in nature thereof; (2) waives any defense based upon, and specifically assents to, any and all extensions and postponements of the time of payment and all other indulgences and forbearances which may be granted by the holder to any party liable hereon; (3) agrees to the addition or release of any other party or person primarily or secondarily liable; and (4) agrees to be bound by all of the terms contained in this Note and agrees that the obligations and agreements of all such parties shall be joint and several.

No delay or omission on the part of the holder in exercising any right hereunder or any right under any instrument or agreement executed in connection herewith shall operate as a waiver of such right, or of any other right, of such holder, not shall any delay, omission or waiver on any one occasion be deemed to be a bar to, or waiver of, the same or any other right on any future occasion.

No single or partial exercise of any power hereunder or under any mortgage or security agreement securing this Note shall preclude other or future exercise thereof or the exercise of any other power. The holder hereof shall at all times have the right to proceed against any portion of the security held herefor in such order and in such manner as the holder may see fit, without waiving any rights with respect to any other security.

Subject to the applicable grace periods, all time of payment of principal, interest or any other monies due under or in respect to this note or under or in respect to any mortgage, security agreement or other instrument or agreement securing this note shall be of the strict essence.

Any default under this note or in the performance and observance of the provisions of any agreement pertaining thereto continuing after the applicable grace or cure period, if any, shall be deemed a default on all other notes, obligations and liabilities of Maker to the holder, whether now existing or hereafter arising, and any default on any other note, obligation or liability of Maker to the holder, whether now existing or hereafter arising, shall also be deemed a default under this note.

If any term or provision of this note, or any portion of any such term or provision, shall beheld invalid or against public policy, or if the application of the same to any person or circumstance is held invalid or against public policy, then, the remainder of this note (or the remainder of such term or provision) and the application thereof to other persons or circumstances shall not be affected thereby and shall remain valid and in full force and effect to the fullest extent permitted by law. No manager, member, trustee, beneficiary, stockholder, director, officer or employee of the holder shall have any personal liability to Maker. It is agreed that the holder may grant participations in this note or collaterally assign the same. All rights and obligations hereunder shall be governed by the laws of the Commonwealth of Massachusetts and this note is executed as and shall have the effect of a sealed instrument.

Notwithstanding any provision herein or in any instrument now or hereafter securing this note, the total liability for payments in the nature of interest shall not exceed the limitations now imposed by the applicable laws of the state whose laws are controlling on the subject as shall be determined by final order of a court of competent jurisdiction. The Maker hereby submits to the jurisdiction of the courts of the Commonwealth of Massachusetts for all matters in connection herewith as well as for all purposes in connection with any other relationship between the undersigned and the Lender and agrees that service of process may be effected by certified mail.

**JURY WAIVER.** **THE BORROWER AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THE AGREEMENT, THE OBLIGATIONS, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE**

NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE, OR HAS NOT BEEN, WAIVED. THE BORROWER CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

THE UNDERSIGNED DOES HEREBY ATTEST, CERTIFY, REPRESENT, WARRANT AND COVENANT THAT NEITHER THE PREMISES NOR ANY PORTION THEREOF DESCRIBED IN ANY MORTGAGE SECURING THIS NOTE ARE USED OR ARE INTENDED TO BE USED BY THE UNDERSIGNED AS A DWELLING, OR AS A HOME, AND THAT THE PROCEEDS OF THIS TRANSACTION ARE SOLELY TO BE USED FOR COMMERCIAL AND BUSINESS PURPOSES AND NOT FOR AGRICULTURAL OR CONSUMER PURPOSES. AND THE UNDERSIGNED ACKNOWLEDGES THAT THIS ATTESTATION, CERTIFICATION, REPRESENTATION, WARRANT AND COVENANT HAS BEEN RELIED UPON BY THE HOLDER HEREOF.

Signed in the presence of:

SOUTHERN END REALTY, LLC

By: _____

KEITH M. GORMAN-MANAGER

By: _____

BRYAN P. GORMAN - MANAGER

Secured by a mortgage on condominium units located at 44 Highland Street, Unit 1; 44 Highland Street, Unit 2; and 42 Highland Street, Unit 1, Lowell, Massachusetts 01852.

# **EXHIBIT C**

GUARANTY

For good and valuable consideration, the receipt and sufficiency of which are acknowledged, the undersigned (jointly and severally if more than one) unconditionally guaranties, in accordance with the terms hereof and without any prior written notice, the payment and performance of all of the Liabilities (as defined herein) of SOUTHERN END REALTY, LLC. (the "Borrower"), to BENSON LUMBER AND HARDWARE, INC. (the "Lender").

"Liability" and "Liabilities" include, without limitation, any and all liabilities, debts, and obligations of the Borrower to the Lender and any and all liabilities, debts, and obligations of every endorser, guarantor, and surety of the Borrower to the Lender, each of every kind, nature, and description, now existing or hereafter arising, excepting only personal loans to other guarantors. "Liabilities" also includes, without limitation, each obligation to repay all loans, advances, indebtedness, notes, obligations, overdrafts, and amounts now or hereafter at any time owing by the Borrower to the Lender (including all future advances or the like whether or not given pursuant to a commitment by the Lender), whether or not any of such are liquidated, unliquidated, primary, secondary, secured, unsecured, direct, indirect, absolute, contingent, or of any other type, nature, or description, or by reason of any cause of action which the Lender may hold against the Borrower. "Liabilities" also includes, without limitation, all notes and other obligations of the Borrower now or hereafter assigned to or held by the Lender, each of every kind, nature, and description. "Liabilities" also includes, without limitation, all interest and other amounts which may be charged to the Borrower and/or which may be due from the Borrower to the Lender from time to time; all fees and charges in connection with any account maintained by the Borrower with the Lender or any service rendered by the Lender; and all costs and expenses incurred or paid by the Lender in respect of any agreement between the Borrower and the Lender or instrument furnished by the Borrower to the Lender (including, without limitation, Costs of Collection, attorneys' reasonable fees, and all court and litigation costs and expenses). "Liabilities" also includes, without limitation, any and all obligations of the Borrower to act or to refrain from acting in accordance with the terms, provisions, and covenants of any agreement between the Borrower and the Lender or instrument furnished by the Borrower to the Lender including, without limitation, hazardous waste remediation or liability. As used herein, the term "indirect" includes without limitation, all obligations and liabilities which the Lender may incur or become liable for, on account of, or as a result of any transactions between the Lender and the Borrower including, without limitation, any which may arise out of any Letter of Credit or acceptance, or similar instrument issued or obligation incurred by the Lender for the account of the Borrower; any which may arise out of any action brought or threatened against the Lender by the Borrower, any guarantor or endorser of the Liabilities of the Borrower, or by any other person in connection with the Liabilities; and any obligation of the Borrower which may arise as endorser or guarantor of any third party, or as obligor to any third party which obligation has been endorsed, participated, or assigned to the Lender. The term "indirect" also refers to any direct or contingent liability of the Borrower to make payment towards any obligation held by the Lender (including, without limitation, on account of any industrial revenue bond) to the extent so held by the Lender.

"Costs of Collection" includes, without limitation, all attorneys' reasonable fees, and out-of-pocket expenses incurred by the Lender's attorneys, and all out-of-pocket costs incurred by the Lender after an Event of Default under any document evidencing or securing any Liability in the administration of the Liabilities, this Guaranty, and all other instruments and agreements executed in connection with or relating to the Liabilities including, without limitation, costs and expenses associated with travel on behalf of the Lender. Costs of Collection also includes, without limitation, all attorneys' reasonable fees, out-of-pocket expenses incurred by the Lender's attorneys, and all out-of-pocket costs and expenses incurred by the Lender, including, without limitation, costs and expenses associated with travel on behalf of the Lender, which costs and expenses are directly or indirectly related to or in respect of the Lender's efforts to preserve, protect, collect, or enforce the Liabilities and/or the Lender's Rights and Remedies or any of the Lender's rights and remedies against or in respect of the Borrower, any other guarantor or other person liable in respect of the Liabilities or any collateral granted to the Lender by the Borrower, such guarantor, or other person (whether or not suit is instituted in connection with such efforts). The Costs of Collection shall be added to the Liabilities of the Borrower to the Lender, as if such had been lent, advanced, and credited by the Lender to, or for the benefit of, the Borrower.

For said good and valuable consideration, the undersigned also shall indemnify, defend, and hold the Lender harmless of and from any claim brought or threatened against the Lender by the Borrower, the undersigned, any other guarantor or endorser of the Liabilities or any other person (as well as from attorneys' reasonable fees and expenses in connection therewith) on account of the Lender's relationship with the Borrower, the undersigned, or any other guarantor or endorser of the Liabilities (each of which may be defended, compromised, settled, or pursued by the Lender with counsel of the Lender's selection, but at the expense of the undersigned). This indemnity shall not apply in the event that the Borrower or any guarantor is successful in obtaining a final judgment against the Lender.

The undersigned will pay on demand interest on all amounts due to the Lender under this Guaranty, or arising under any documents, instruments, or agreements relative to any collateral securing this Guaranty, from the time the Lender first demands payment of this Guaranty at a rate equal to the highest rate chargeable to the Borrower after the earlier of (i) demand or (ii) the occurrence of any event of default.

Any and all deposits or other sums at any time credited by or due to the undersigned from the Lender or any of its banking or lending affiliates, or any bank acting as a participant under any loan arrangement between the Lender and the Borrower, and any cash, securities, instruments or other property of the undersigned in the possession of the Lender, or any of its banking or lending affiliates, or any bank acting as a participant under any loan arrangement between the Lender and the Borrower, whether for safekeeping or otherwise, or in transit to or from the Lender or any of its banking or lending affiliates or any such participant, or in the possession of any third party acting on the Lender's behalf (regardless of the reason the Lender had received same or whether the Lender has conditionally released the same) shall at all times constitute security for all of the Liabilities and for all obligations of the undersigned to the Lender and may be applied or set off against such Liabilities and against the obligations of the undersigned to the Lender including, without limitation, those arising hereunder, at any time

-2-

after a default (but prior to expiration of the applicable grace or cure period, if any) whether or not such are then due and whether or not the other collateral is then available to the Lender.

The obligations of the undersigned hereunder shall not be effected by any fraudulent, illegal, or improper act by the Borrower, nor by any release, discharge, or invalidation, by operation of law or otherwise, of the Liabilities, or by the legal incapacity of the Borrower, the undersigned, or any other person liable or obligated to the Lender for or on the Liabilities. Interest and Costs of Collection shall continue to accrue and shall continue to be deemed Liabilities guarantied hereby notwithstanding any stay to the enforcement thereof against the Borrower or disallowance of any claim therefor against the Borrower.

The within instrument incorporates all discussions and negotiations between the undersigned and the Lender concerning the guaranty and indemnification provided by the undersigned hereby. No such discussions or negotiations shall limit, modify, or otherwise affect the provisions hereof. No provision hereof may be altered, amended, waived, cancelled or modified, except by a written instrument executed, sealed, and acknowledged by a duly authorized officer of the Lender and the undersigned.

The undersigned waives presentment, demand, notice, and protest with respect to the Liabilities or this Guaranty, and further waives any delay on the part of the Lender, and further waives any right to require the Lender to pursue or to proceed against the Borrower or any collateral which the Lender might have been granted to secure the Liabilities or to secure the obligations of the undersigned hereunder, and further waives notice of acceptance of this Guaranty.

The obligations of the undersigned hereunder are primary, with no recourse necessary by the Lender against the Borrower or any collateral given to secure the Liabilities or against any other person liable for or on the Liabilities prior to proceeding against the undersigned hereunder. The undersigned assents to any indulgence or waiver which the Lender may grant or give the Borrower and/or any other person liable or obligated to the Lender for or on the Liabilities. The undersigned authorizes the Lender to alter, amend, cancel, waive, or modify any term or condition of the Liabilities and of the obligations of any other person liable or obligated to the Lender for or on the Liabilities, without notice to, or consent from, the undersigned. No compromise, settlement, or release by the Lender of the Liabilities or of the obligations of any such other person (whether or not jointly liable with the undersigned) and no release of any collateral securing the Liabilities or securing the obligations of any such other person shall affect the obligations of the undersigned hereunder. No action by the Lender which has been assented to herein shall affect the obligations of the undersigned to the Lender hereunder.

The undersigned shall not exercise any right of subrogation, reimbursement, indemnity, contribution, or the like (including any right to proceed upon any collateral granted by the Borrower to the undersigned) against the Borrower or any person liable or obligated for or on the Liabilities unless and until all of the Liabilities have been satisfied in full.

This instrument shall inure to the benefit of the Lender, its successors and assigns, shall be binding upon the heirs, successors, representatives, and assigns of the undersigned, and shall

-3-

apply to all Liabilities of the Borrower and any successor to the Borrower, including any successor by operation of law.

The rights, remedies, powers, privileges, and discretions of the Lender hereunder (hereinafter, the "Lender's Rights and Remedies") shall be cumulative and not exclusive of any rights or remedies which it would otherwise have. No delay or omission by the Lender in exercising or enforcing any of the Lender's Rights and Remedies shall operate as, or constitute, a waiver thereof. No waiver by the Lender of any of the Lender's Rights and Remedies or of any default or remedies under any other agreement with the undersigned, or of any default under any agreement with the Borrower, or any other person liable or obligated for or on the Liabilities, shall operate as a waiver of any other of the Lender's Rights and Remedies or of any default or remedy hereunder or thereunder. No exercise of any of the Lender's Rights and Remedies and no other agreement or transaction of whatever nature entered into between the Lender and the undersigned, the Lender and the Borrower, and/or the Lender and any such other person at any time shall preclude any other exercise of the Lender's Rights and Remedies. No waiver by the Lender of any of the Lender's Rights and Remedies on any one occasion shall be deemed a waiver on any subsequent occasion, nor shall it be deemed a continuing waiver. All of the Lender's Rights and Remedies and all of the Lender's rights, remedies, powers, privileges, and discretions under any other agreement or transaction with the undersigned, the Borrower, or any such other person shall be cumulative and not alternative or exclusive, and may be exercised by the Lender at such time or times and in such order of preference as the Lender in its sole discretion may determine.

This instrument and all documents which have been or may be hereinafter furnished by the undersigned to the Lender may be reproduced by the Lender by any photographic, photostatic, microfilm, microcard, miniature photographic, xerographic, or similar process, and the Lender may destroy the original from which such document was so reproduced. Any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

This instrument shall be governed, construed, and interpreted in accordance with the laws of The Commonwealth of Massachusetts. The undersigned submits to the jurisdiction of the courts of The Commonwealth of Massachusetts for all matters in connection herewith as well as for all purposes in connection with any other relationship between the undersigned and the Lender and agrees that service of process may be effected by certified mail. It is the intention of the undersigned that the provisions of the within Guaranty and indemnification be liberally construed to the end that the Lender may be put in as good a position as if the Borrower had promptly, punctually, and faithfully performed all Liabilities and the undersigned had promptly, punctually, and faithfully performed hereunder.

Any determination that any provision herein is invalid, illegal, or unenforceable in any respect in any instance shall not affect the validity, legality, or enforceability of such provision in any other instance and shall not affect the validity, legality, or enforceability of any other provision contained herein.

-4-

The obligations of the undersigned hereunder shall remain in full force and effect and as to all Liabilities, without regard to any reduction of the Liabilities other than by the undersigned pursuant to this Guaranty, until the earlier of (a) ten (10) days following the actual receipt by the Lender at its office (presently 6 Martin Street, Derry, New Hampshire 03038) of written notice signed by the undersigned of the termination thereof, or (b) the delivery of written notice of termination dated and signed by a duly authorized officer of the Lender, which notice of termination includes specific reference to this provision. No termination hereof shall affect any Liability in existence or outstanding ten (10) days following the date of such actual receipt or delivery (including, without limitation, those which are contingent or not then due and those which arise out of any check, draft, item, or paper which was made, executed, or drawn prior to the expiration of such ten (10) days, even if received by the Lender thereafter) nor any obligation of the undersigned hereunder which by its terms includes any of the Liabilities of a contingent nature (including, without limitation, the indemnification provided for herein).

No trustee, beneficiary, stockholder, director, officer or employee of the Lender shall have any personal liability to any of the undersigned.

The undersigned certifies that the undersigned read this Guaranty prior to its execution.

It is intended that this Guaranty take effect as a sealed instrument this _14th_ day of February, 2020.


Signed in my Presence:


Witness:

_____                              _____   2-14-20
                                                        KEITH M. GORMAN

| | |
|---|---|
| 261,103.34 | 1.50% |
| | |
| 10/31/2020 | 3,916.55 |
| 11/30/2020 | 3,916.55 |
| 12/31/2020 | 3,916.55 |
| 1/31/2021 | 3,916.55 |
| 2/28/2021 | 3,916.55 |
| 3/31/2021 | 3,916.55 |
| 4/30/2021 | 3,916.55 |
| 5/31/2021 | 3,916.55 |
| 6/30/2021 | 3,916.55 |
| 7/31/2021 | 3,916.55 |
| 8/31/2021 | 3,916.55 |
| 9/30/2021 | 3,916.55 |
| 10/31/2021 | 3,916.55 |
| 11/30/2021 | 3,916.55 |
| 12/31/2021 | 3,916.55 |
| 1/31/2022 | 3,916.55 |
| 2/28/2022 | 3,916.55 |
| 3/31/2022 | 3,916.55 |
| 4/30/2022 | 3,916.55 |
| 5/31/2022 | 3,916.55 |
| 6/30/2022 | 3,916.55 |
| 7/31/2022 | 3,916.55 |
| 8/31/2022 | 3,916.55 |
| 9/30/2022 | 3,916.55 |
| 10/31/2022 | 3,916.55 |
| 11/30/2022 | 3,916.55 |
| 12/31/2022 | 3,916.55 |
| 1/31/2023 | 3,916.55 |
| | |
| | 109,663.40 |

# **EXHIBIT G**

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
SUPERIOR COURT DEPARTMENT

MIDDLESEX, SS.

CIVIL ACTION NO.
2181CV4445

WILLIAM FRANKS,
        Plaintiff            )
                             )
                             )
VS.                          )
                             )
SOUTHERN END REALTY, LLC,    )
BRYAN P. GORMAN, MANAGER OF  )
SOUTHERN END REALTY, LLC, AND )
KEITH M. GORMAN, INDIVIDUALLY AND AS )
MANAGER OF SOUTHERN END REALTY, LLC, )
        Defendants           )

```
FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

NOV 1 8 2021
```

## COMPLAINT

The Plaintiff, William Franks brings this action against the Defendants, Southern End Realty, LLC, Bryan P. Gorman, Manager of Southern End Realty, LLC, and Keith M. Gorman, Individually and as Manager of Southern End Realty, LLC, for reformation of a deed as a result of mutual mistake and or fraud.

## JURISDICTION

1. This Court has jurisdiction pursuant to Mass. Gen. Laws ch. 214, § 1.

## PARTIES

2. The Plaintiff, William Franks, is an individual residing in Tyngsboro, Middlesex County, Massachusetts.

3. The Defendant, Southern End Realty, LLC, is a Massachusetts limited liability company hospital with a principal office located at 1105 Lakeview Avenue, Dracut, Middlesex County, Massachusetts.

4. The Defendant, Bryan P. Gorman, is a manager of Defendant Southern End Realty, LLC, and has a business address of 1105 Lakeview Avenue, Dracut, Middlesex County, Massachusetts.

5.  The Defendant, Keith M. Gorman, is a manager of Defendant Southern End Realty, LLC, and has a business address of 1105 Lakeview Avenue, Dracut, Middlesex County, Massachusetts, and is an individual residing at 167 Clement Road, Pelham, Hillsborough County, New Hampshire.

## STATEMENT OF FACTS

6.  In or around April of 2017, the Plaintiff and Defendant Southern End Realty, LLC, entered into negotiations for the purchase and sale of five (5) parcels of land for consideration of three hundred thousand and xx/00 ($300,000.00) dollars.

7.  The five (s) parcels of land subject to said negotiations were:

    a.  10 Tudor Street, Dracut, Middlesex County, Massachusetts;
    b.  18 Shelton Street, Dracut, Middlesex County, Massachusetts;
    c.  17 Chandler Street, Dracut, Middlesex County, Massachusetts;
    d.  54 Frank Street, Dracut, Middlesex County, Massachusetts; and
    e.  35 Frank Street, Dracut, Middlesex County, Massachusetts.

8.  In pursuance of the negotiations on or about April 14, 2017, Defendant Southern End Realty, LLC executed and delivered a quitclaim deed purportedly conveying said parcels to the Plaintiff in consideration of three hundred thousand and xx/100 ($300,000.000) dollars, and said deed was recorded in the Middlesex North Registry of Deeds, Book 31040, Page 263, a copy of which is attached hereto as Exhibit "A".

9.  In or around June, 2020, the Plaintiff entered into an agreement to convey the parcel known as 18 Shelton Street, Dracut, Middlesex County, Massachusetts, when it was discovered that said parcel is owned by Defendant Keith M. Gorman, Individually, as evidenced by a deed was recorded in the Middlesex North Registry of Deeds, Book 29703, Page 4, a copy of which is attached hereto as Exhibit "B".

10. By fraud of the Defendants and/or mistake of the parties in the drafting of the deed dated April 14, 2017, the parcel known as 18 Shelton Street, Dracut, Middlesex County, Massachusetts, intended to be conveyed to the Plaintiff by Defendant Southern End Realty, LLC, was not conveyed to the Plaintiff, as the Defendant Southern End Realty, LLC, did not in fact own said parcel or have any interest in the same.

11. On or about September 15, 2020, the Plaintiff served a request on the Defendants via constable that the parcel known as 18 Shelton Street, Dracut, Middlesex County, Massachusetts, be conveyed to the Plaintiff by Defendant Keith W. Gorman, a copy of which is attached hereto as Exhibit "C", but Defendant Keith W. Gorman refuses to execute a deed effectuating the conveyance.

## RELIEF REQUESTED

WHEREFORE, the Plaintiff, William Franks, requests this Honorable Court:

1. That the Defendant, Keith W. Gorman, be restrained and enjoined from transferring, selling, mortgaging, or an any manner hypothecating the parcel known as 18 Shelton Street, Dracut, Middlesex County, Massachusetts, until further order of this court;

2. That judgment be entered reforming the deed as aforesaid;

3. That the Defendant Keith W. Gorman be ordered to sign, execute and acknowledge a deed to 18 Shelton Street, Dracut, Middlesex County, Massachusetts, to the Plaintiff;

4. Award the Plaintiff reasonable attorney's fees and costs; and

5. Provide all other relief that is just and proper.


PLAINTIFF DEMANDS TRIAL
BY JURY ON ALL ISSUES


Dated: November 16, 2021

Respectfully Submitted,
WILLIAM FRANKS,
By his attorneys,

Brian T. Akashian BBO# 661458
Kevin J. Murphy BBO# 363115
One Courthouse Lane
Chelmsford, MA 01824
Tel. No.: (978) 459-6320
brian@themurphylawoffices.com
kevin@themurphylawoffices.com

# EXHIBIT

# A

2017 00014902

Bk: 31040 Pg: 263   Page: 1 of 4
Recorded: 04/14/2017 09:47 AM

MASSACHUSETTS EXCISE TAX
Middlesex North ROD #14 001
Date: 04/14/2017 09:47 AM
Ctrl# 071603 02316 Doc# 00014902
Fee: $1,368.00 cons: $300,000.00

### QUITCLAIM DEED

**Southern End Realty, LLC,** a Massachusetts limited liability company having a post office address of 1105 Lakeview Avenue, Dracut, Middlesex County, Massachusetts, for consideration of the forgiveness of debt in the amount of Three Hundred Thousand and 00/100 ($300,000.00) Dollars, grants to **William Franks**, married, of P.O. Box 18, Tyngsborough, Middlesex County, Massachusetts

WITH QUITCLAIM COVENANTS

**PARCEL ONE – 10 Tudor Street, Dracut, Massachusetts**

A certain parcel of land, with the buildings thereon if any there be, at 10 Tudor Street, shown as Lot 19 on Assessors' Map 60, and further described in a notice of Tax taking recorded in Middlesex North District Registry of Deeds, Book 6573, Page 117.

Foreclosure proceedings by the Town of Dracut are a matter of record. See Land Court Case No. 106885 T.L. and Notice recorded in said Registry, Book 7621, Page 024. See also Final Judgment in Tax Lien Case issued by the Land Court on March 21, 2002, recorded in said Registry at Book 13094, Page 241.

This conveyance is made subject to and with the benefit of all easements and restrictions, if any, lawfully existing in, upon, or over said land or appurtenant thereto, and subject to covenants or record, if any.

Meaning and intending to describe and convey the same premises conveyed to the within granter by deed of Frank J. Gorman a/k/a Francis J. Gorman, dated October 31, 2012, and recorded with said Registry of Deeds in Book 26604, Page 184.

No title search was requested and no title search was performed. No zoning certification was requested and no zoning certification was provided.

**PARCEL TWO – 18 Shelton Street, Dracut, Massachusetts**

A certain parcel of land at 18 Shelton Street, shown as Lot 236-2 on Assessors' Map 47, and further described in a notice of Tax Taking recorded in Middlesex North District Registry of Deed, Book 7415, Page 284.

Foreclosure proceedings by the Town of Dracut are a matter of record. See Land Court Case No. 125512 T.L. and Notice recorded in said Registry, Book 11850, Page 031. See also Final Judgment in Tax Lien Case issued by the Land Court on March 27, 2003, recorded in said Registry at Book 15195, Page 135.

This conveyance is made subject to and with the benefit of all easements and restrictions, if any, lawfully existing in, upon, or over said land or appurtenant thereto, and subject to covenants of record, if any.

Meaning and intending to describe and convey the same premises conveyed to the within granter by deed of Frank J. Gorman a/k/a Francis J. Gorman, dated October 31, 2012, and recorded with said Registry of Deeds in Book 26604, Page 184.

No title search was requested and no title search was performed. No zoning certification was requested and no zoning certification was provided.

**PARCEL THREE – 17 Chandler Street, Dracut, Massachusetts**

The land in said Dracut, Middlesex County, Massachusetts with the buildings thereon situated on the northerly side of Eden Avenue, containing 20,000 square feet of land and being shown as Lots 78 and 79 on a plan of land entitled "Plan of Land in Dracut, Massachusetts to be known as Christian Hill Heights belonging to Harold S. Dupee" compiled from surveys of adjacent properties made of Brooks, Jordan & Graves, Osgood, & Snell and Smith Brooks, C.E.'s subdivided by Leonard S. Belanger & Arthur C. Dawes, Eng., August I 952, recorded with said Registry of Deeds in Book of Plans 82, Plan 176 (1) and thus bounded:

| | |
|---|---|
| SOUTHERLY | by said Eden Avenue two hundred (200) feet; |
| WESTERLY | by Lot 80 as shown on said plan one hundred (100) feet; |
| NORTHERLY | by Lots 73, 74, 75 and 76 as shown on said Plan two hundred (200) feet; and |
| EASTERLY | by said Lot 77 as shown on said plan one hundred (100) feet; |

Also another parcel of land situated in said Dracut on the southerly side of Chandler Street, containing 15,000 square feet of land, being shown as Lots 74 and 75 on the above mentioned plan and thus bounded:

| NORTHERLY | by said Chandler Street one hundred fifty (50) |
| EASTERLY | by Lot 76 as shown on said plan one hundred (100) |
| SOUTHERLY | by Lots 78 and 79 as shown on said plan one hundred fifty (150) feet; |
| WESTERLY | by Lot 73 as shown on said plan one hundred (100) feet; |

Be said content and any or all of said measurements more or less and however otherwise said premises may be measured, bounded or described.

Meaning and intending to describe and convey the same premises conveyed to the within granter by deed of Frank J. Gorman a/k/a Francis J. Gorman, dated October 31, 2012, and recorded with said Registry of Deeds in Book 26604, Page 184.

No title search was requested and no title search was performed. No zoning certification was requested and no zoning certification was provided.

### PARCEL FOUR- 54 Frank St., Dracut, Massachusetts:

A certain parcel of land located in Dracut, Middlesex County, Massachusetts situated on the southerly side of Frank Street and shown as Lot 32 on a plan of land entitled "Plan of Addition to Bridge Street Acres Dracut, Mass. Lots 28, 29, 30, 31, 32, 33 and 34 Property of F.P.R. Realty Trust", dated April 1967 by Dracut Associates, Dracut, Mass., and recorded with Middlesex North District Registry of Deed, Book of Plans 107, Plan 133, to which plan reference may be made for a more definite description.

Lot 32 contains 26,780 square feet according to said plan.

Meaning and intending to describe and convey the same premises conveyed to the within granter by deed of Thomas J. Saab, Co-Administrator, et al, dated December 2, 2011 and recorded with said Registry of Deeds in Book 25511, Page 212.

No title search was requested and no title search was performed. No zoning certification was requested and no zoning certification was provided.

### PARCEL FIVE- 35 Frank St., Dracut, Massachusetts:

A parcel of land situate on the north side of Frank Street at the corner of Bridge Street, in Dracut, Middlesex County, being Lot 33 on a plan entitled "Plan of Addition to Bridge Street Acres Dracut, Mass. Lots 28, 29, 30, 31, 32, 33 and 34 Property of F.P.R. Realty Trust", dated April 1967 by Dracut Associates, Dracut, Mass., and

recorded with Middlesex North District Registry of Deed, Book of Plans 107, Plan 133.

Lot 33 contains 23,560 square feet according to said plan.

Meaning and intending to describe and convey the same premises conveyed to the within granter by deed of Thomas J. Saab, Co-Administrator, et al, dated December 2, 2011 and recorded with said Registry of Deeds in Book 25511, Page 212.

No title search was requested and no title search was performed. No zoning certification was requested and no zoning certification was provided.

IN WITNESS WHEREOF, Southern End Realty, LLC has caused its seal to be hereto affixed and in these presents signed by Keith M. Gorman and Bryan P. Gorman, Managers, this 14 day of April, 2017.

SOUTHERN END REALTY, LLC

By: Keith M. Gorman, Manager

By: Bryan P. Gorman, Manager

## COMMONWEALTH OF MASSACHUSETTS

Middlesex, SS:

On this 14 day of ____April____, 2017, before me, the undersigned notary public, personally appeared Keith M. Gorman and Bryan P. Gorman, Managers, of Southern End Realty, LLC, proved to me through satisfactory evidence of identification, which were Massachusetts driver's licenses, to be the persons whose named are signed on the preceding or attached documents and acknowledged to me that they signed it voluntarily for its stated purposes as their free act and deed on behalf of SOUTHERN END REALTY, LLC.

NOTARY PUBLIC
My Commission Expires: August 4, 2017

KRISTINE M. GORMAN
Notary Public
Commonwealth of Massachusetts
My Commission Expires
August 4, 2017

# EXHIBIT

# B

# Middlesex North Registry of Deeds

# Electronically Recorded Document

### This is the first page of this document - Do not remove

---

## Recording Information

| | |
|---|---|
| Document Number | : 59902 |
| Document Type | : DEED |
| Recorded Date | : December 30, 2015 |
| Recorded Time | : 12:27:01 PM |

| | |
|---|---|
| Recorded Book and Page | : 29703 / 4 |
| Number of Pages(including cover sheet) | : 3 |
| Receipt Number | : 721813 |
| Recording Fee (including excise) | : $316.52 |

```
************************************************
MASSACHUSETTS EXCISE TAX
Middlesex North ROD #14 001
Date: 12/30/2015 12:27 PM
Ctrl# 064947 22285 Doc# 00059902
Fee: $191.52 cons: $42,000.00
************************************************
```

**Middlesex North Registry of Deeds**
**Richard P. Howe Jr., Register**
**360 Gorham Street**
**Lowell, Massachusetts 01852**
**978/322-9000**
**www.lowelldeeds.com**

## MASSACHUSETTS QUITCLAIM DEED

**SOUTHERN END REALTY, LLC.** a Massachusetts Limited Liability Company with a principal place of business located at 1105 Lakeview Avenue, Dracut, Middlesex County, Massachusetts

For consideration of Forty-Two Thousand and 00/100 ($42,000.00) Dollars

Grants to KEITH M. GORMAN of  1105 Lakeview Avenue, Dracut, MA  01826

with quitclaim covenants

A certain parcel of land in Dracut,  at 18 Shelton Street, shown as Lot 236-2 on Assessors' Map 47 and further described in a notice of Tax Taking recorded in Middlesex North District Registry of Deeds, Book 7415, Page 284.

Foreclosure proceedings by the Town of Dracut are a matter of record.  See Land Court Case No. 125512 T.L. and Notice recorded in said Registry, Book 11850, Page 031.  See also Final Judgment in Tax Lien Case issued by the Land Court on March 27, 2003, recorded in said Registry at Book 15195, Page 135.

This conveyance is made subject to and with the benefit of all easements and restrictions, if any, lawfully existing in, upon, or over said land or appurtenant thereto, and subject to covenants of record, if any.

No title search was requested and no title search was performed.  No zoning certification was requested and no zoning certification was provided.

Being a portion of the premises conveyed to us by deed of Frank J. Gorman, Sr. a/k/a Francis J. Gorman dated October 31, 2012 recorded with said Registry, Book 26604, Page 184.

Property Address:  18 Shelton Street, Dracut, MA  01826

This deed is given in the ordinary course of the Grantor's business and is not a conveyance of all or substantially all of the Grantor's assets located within the Commonwealth of Massachusetts.

This is not homestead property of the grantor.

This conveyance is made subject to all existing mortgages and encumbrances of record.

Witness our hands and seals this 30th day of December, 2015.

SOUTHERN END REALTY, LLC

Keith M. Gorman, Manager

Bryan P. Gorman, Manager

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

On this 30th day of December, 2015, before me, the undersigned Notary Public, personally appeared Keith M. Gorman and Bryan P. Gorman, Managers of Southern End Realty, LLC., proved to me through satisfactory evidence of identification, which were driver's licenses to be the persons whose names are signed on the preceding document in my presence and acknowledged to me that they signed this document freely and voluntarily on behalf of Southern End Realty, LLC for its stated purpose.

Notary Public:   Michael J. Fadden
My Commission Expires:   09/17/2021

# EXHIBIT C

Law Offices of

# KEVIN J. MURPHY

KEVIN J. MURPHY                                                                                              BRIAN T. AKASHIAN

One Courthouse Lane   Chelmsford, Massachusetts 01824   Tel 978-459-6320   Fax 978-452-9737

7018 2290 0000 1839 0820                                        July 29, 2020

Via Certified Mail – Return Receipt Requested

Southern End Realty, LLC
1105 Lakeview Avenue
Dracut, MA 01826

Attn:   Brian P. Gorman, Keith M. Gorman and Frank J. Gorman

Re:     Fraudulent Conveyance of 18 Shelton Street, Dracut, Middlesex County, Massachusetts

Dear Sirs:

Please be advised that I have been consulted and retained by William Franks regarding the above-referenced matter.  On or about April 14, 2017, Southern End Realty, LLC, in consideration of three hundred thousand and xx/100 ($300,000.00) dollars, purportedly conveyed the property at 18 Shelton Street, Dracut, Middlesex County, Massachusetts to my client. However, Southern End Realty, LLC did not have any interest in said property and accepted consideration for its purported conveyance. Said transaction is a fraudulent conveyance in violation of the Uniform Fraudulent Conveyance Act.  Title to said property is currently held by Keith M. Gorman.  Rest assured, if said property is not conveyed to my client by Keith M. Gorman by quitclaim deed within seven (7) days of this letter, I will commence legal proceedings in a court of appropriate jurisdiction seeking the return of the three hundred thousand and xx/100 ($300,000.00) dollars plus costs and attorney's fees.

If you have any questions, please do not hesitate to contact the undersigned.

Very truly yours,

Brian T. Akashian

BTA:bta
CC:   Client

# COMMONWEALTH OF MASSACHUSETTS
## AAA CONSTABLE SERVICE
### 25 HURD STREET
### LOWELL, MA  01852

### *Officer's Return of Service and Affidavit*

Letter

Southern End Realty, LLC
1105 Lakeview Ave
Dracut, MA 01826

Plaintiff

v.

Defendant

*Middlesex*  , s.s.                                         Date:      9/15/2020

By virtue of this notice, I this day served a true copy of the documents listed
above, by delivering it    **Last and usual place of abode - put in office
drop box at 1:30pm also mailed a copy**

at          1105 Lakeview Ave
            Dracut, MA 01826

*Jason M. Burke*
_____
Jason M Burke
Massachusetts Constable

20091810